## Leonard CHARRIER

v.

## Louise Lessley BELL, Julia Mae Montfort, James T. Falkenheiner, Williard I. Lessley, and Louise Jensen

### and

## State of Louisiana, Louisiana Secretary of Culture Recreation and Tourism, and the Louisiana Archaeological Survey and Antiquities Commission, and Tunica-Biloxi Tribe of Indians.

### Civ. A. No. 81–1010.

United States District Court, M. D. Louisiana.

Sept. 9, 1982.

---

J. Arthur Smith, III, Baton Rouge, La., for plaintiff.

John S. Campbell, Jr., Baton Rouge, La., for Louise B. Bell & Louise Jensen.

Fred Benton, Jr., Baton Rouge, La., for State of La. and La. Archaeological Survey & Antiquities Com'n.

Donald Juneau, New Orleans, La., for Tunica-Biloxi Tribe of Indians.

JOHN V. PARKER, Chief Judge.

Plaintiff, Leonard Charrier, brought this action in the 20th Judicial District for the Parish of West Feliciana, Louisiana, seeking relief under Louisiana law in the form of a declaratory judgment and quantum meruit damages. The case involves ownership of artifacts discovered by plaintiff in an Indian burial ground near Tunica, Louisiana. The artifacts were apparently deposited as grave goods and funerary offerings by the Tunica Indians who lived at the site known as Trudeau Plantation in the 18th and 19th centuries. Plaintiff sued the alleged owners of the land, who later sold all interest in land and artifacts to the State of Louisiana. The State then intervened in the action claiming ownership of the artifacts, or in the alternative asserting ownership as trustee for the Tunica-Biloxi tribe. Plaintiff then moved the state district court to order the Tunica-Biloxi Indians of Louisiana, Inc. to be joined as a defendant, and the court ordered the Tribe to file and serve an answer in intervention. The Tribe then removed the action to this court and at the same time filed a separate action in federal court claiming ownership of the artifacts.

This matter is presently before the court on Charrier's motion, as plaintiff, to remand the original suit, Civil Action No. 81–1010, and on his motion, as defendant, to stay the Tribe's federal action, Civil Action No. 81–1009. Oral arguments have been heard on both motions and supplemental briefs have been filed.

Plaintiff claims that the removed action was properly within the jurisdiction of the 20th Judicial District Court and that it was improperly removed because the plaintiff's petition, as supplemented and amended, does not present a claim or right arising under the Constitution, treaties or laws of the United States, because all defendants did not join in the petition for removal and intervenor is without any right to remove an action to federal court.

Plaintiff's claim to ownership of the artifacts is based on Louisiana Civil Code Articles 3420, 3421, or alternatively, on Article 3423, and in the event the court does not recognize the plaintiff's claim to ownership, plaintiff alternatively seeks a judgment in quantum meruit on the basis of unjust enrichment for services and expenses in connection with the archaeological work done in finding the Tunica Treasure. Plaintiff relies on these claims to show that no federal question jurisdiction exists. However, 28 U.S.C. § 1446(b) allows a defendant to remove within 30 days after receipt "of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." Thus, we must look at the pleadings as they were at the time of removal.

The State argues that plaintiff's claims against the Tunica-Biloxi Indian Tribe invoke federal question jurisdiction in that an essential part of the cause of action arises under the federal Constitution, federal law or treaties, and that although plaintiff's petition may not make specific reference to any federal law, federal courts must look to the substance of the complaint, and not the labels used in it. In Re Carter, 618 F.2d 1093 (5th Cir. 1980), writ denied 450 U.S. 949, 101 S.Ct. 1410, 67 L.Ed.2d 378 (1981).

The Tribe, on the other hand, at first agreed that plaintiff's petition "alleges only state law causes of action, and does not raise any claim or right under federal law." (See Tribe's opposition memo to plaintiff's motion to remand, p. 4.) It then claimed that the State's intervening petition raised federal question jurisdiction by denying Charrier's claims on the basis of the Louisiana Purchase Treaty and an 1819 Act of Congress. Now, however, the Tribe in its

post-hearing memorandum concedes that any federal issues raised by the State's intervention were by way of defense and thus did not give rise to federal question jurisdiction (See memorandum, p. 7). The Tribe goes, further, however, and argues that when the State court ordered the Tribe to intervene, that court lost jurisdiction and the action could not be removed, it had to be dismissed. The argument is that the federal court has exclusive jurisdiction under 28 U.S.C. §§ 1331(a) and 1362 when an Indian tribe asserts title over property which may be incident to the ownership of tribal lands.

The Tribe argues that under *Oneida Indian Nation of N. Y. State v. County of Oneida, N. Y.,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974), the issue of title to Indian land claimed under federal statute or by aboriginal title is exclusively a matter of federal law. That is not the same thing as holding that federal courts have exclusive jurisdiction over such claims. Moreover, the controversy in this present action is over ownership of the grave goods, not the land.

■ The Tribe's claims to the artifacts under federal statutes and treaties are raised in defense and can not be used to create federal question jurisdiction. *State of Tennessee v. Union & Planters' Bank,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). Ownership of the artifacts is the issue here and either federal or state law may apply to that determination.

■ This matter is also not within the exclusive jurisdiction of the federal court. The Tribe cites no authority for so holding and the legislative history of § 1362 does not indicate an intent of Congress to so hold. H.R.Rep.No.2040, 89th Cong., 2nd Sess., reprinted in [1966] U.S.Code Cong. & Ad.News 3145; and S.Rep., No. 1507, 89th Cong., 2nd Sess. (1966). The primary purpose of 28 U.S.A. § 1362 [1] was to remove the jurisdictional amount in controversy

barrier for Indian tribes and to give tribes the right to sue on their own behalf in any controversy involving tribal property or matters of tribal sovereignty where the United States declines to do so on a tribe's behalf as trustee. *Housing Authority of Seattle v. Washington, Dept. of Revenue,* 629 F.2d 1307 (9th Cir. 1980).

■ Since the plaintiff claims the artifacts under state law and since determination of who owns the artifacts does not come within exclusive federal court jurisdiction, there is no federal question jurisdiction in the removed action and the case must be remanded. The general rule is that where the basis for jurisdiction is doubtful, the court should resolve such doubt in favor of remand. *Shamrock Oil & Gas Corp. v. Sheets,* 313 U.S. 100, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); *McCurtain County Production Corp. v. Cowett,* 482 F.Supp. 809, 812 (E.D.Okl.1978); *Rembrant, Inc. v. Phillips Const. Co., Inc.,* 500 F.Supp. 766 (S.D.Ga.1980).

■ The State did not join in the petition for removal, thus, the removal was procedurally defective. The Tribe's claim to the artifacts is not a "separate and independent claim" within the meaning of 28 U.S.C. § 1441(c), *American Fire and Casualty Co. v. Finn,* 341 U.S. 6, 71 S.Ct. 534, 95 L.Ed. 702 (1951), and the State is not a nominal party, *Tri-Cities Newspapers, Inc. v. Tri-Cities P. P. & A. Local 349,* 427 F.2d 325 (5th Cir. 1970); therefore, it was necessary that the State join in the petition for removal in order to effect removal.

Because remand is granted on other grounds, it is not necessary to determine whether an intervenor can effect removal under the circumstances of this case. 1A Moore, Federal Practice ¶ 0.167[11] n.2 (2nd ed. 1981).

Civil Action No. 81–1009, brought by the Tribe, against Leonard Charrier, the State of Louisiana, and the President and Fellows

---

1. 28 U.S.C. § 1362, Indian tribes: The district courts shall have original jurisdiction of all civil actions, brought by any Indian tribe or band with a governing body duly recognized by the Secretary of the Interior, wherein the matter in controversy arises under the Constitution, laws, or treaties of the United States.

of Harvard College, is presently before the court on Charrier's motion to stay all proceedings. In addition, the court, sua sponte, has raised the issues of federal question jurisdiction and whether the State's 11th Amendment immunity has been waived.

Unlike the removed action where federal question jurisdiction had to be found on the face of Charrier's amended complaint, 28 U.S.C. § 1446(b), the issue in this action is whether the Tribe's claims fall within federal question jurisdiction under 28 U.S.C. §§ 1331(a) and 1362.

■ Although the federal government has long had a special relation to the American Indian, the Congress has not provided for jurisdiction in the federal courts merely because an Indian Tribe is a party to the action. A statutory grant of jurisdiction must be found. Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction § 3579. The Tribe claims jurisdiction under 28 U.S.C. §§ 1331(a) and 1362, which requires that the action be brought by an Indian tribe recognized by the Secretary of the Interior, and that the action arise under the Constitution, laws, or treaties of the United States. No jurisdictional amount is required. The Tribe alleges jurisdiction in that the tribe was duly recognized by the United States and its claim arises under certain treaties and laws of the United States, not the Constitution.

The Tribe argues that the federal courts have exclusive jurisdiction under § 1362 and the State argues that there is federal question jurisdiction under the ruling of *Oneida Indian Nation of New York State v. County of Oneida, New York,* 414 U.S. 661, 94 S.Ct. 772, 39 L.Ed.2d 73 (1974). Charrier does not address the issue of jurisdiction except by arguing that there is no exclusive federal jurisdiction and that the Tribe's action should be dismissed because the 11th Amendment bars this action against the state.

In *Oneida Indian Nation of New York State v. County of Oneida, New York,* 94 S.Ct. 772 (1974), Indian nations claimed the right to recover the fair rental values of certain lands ceded by them in 1795 to the State of New York on the grounds that their right to possession had been confirmed by treaties with the United States and that cessation was without the consent of the federal government as required by the Nonintercourse Act of 1790, 1 Stat. 137, 138. The Supreme Court held that the Indians' claim of right to possession under federal law met the "well-pled complaint rule" and arose under the Constitution, laws or treaties of the United States within the meaning of §§ 1331 and 1362.

In this case, the Tribe claims the right to possession of the Tunica grave goods based upon alleged rights to property where Charrier excavated the burial artifacts. Similar to the claim in *Oneida,* the Tribe contends that it has certain rights to the property by virtue of the Louisiana Purchase Treaty[2] and the Nonintercourse Act of 1790.

■ Federal jurisdiction exists if the complaint states a case arising under federal law, even though on the merits the party may have no federal right. *Bell v. Hood,* 327 U.S. 678, 66 S.Ct. 773, 90 L.Ed. 939, (1946). Dismissal for want of jurisdiction is appropriate only if the federal claim is "so attenuated and unsubstantial as to be absolutely devoid of merit," "obviously frivolous," or "no longer open to discussion." *Hagans v. Lavine,* 415 U.S. 528, 538, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974).

■ Although no direct claim to the land is made in this case, the Tribe is claiming the artifacts through ownership of the land and through several federal statutes mentioned above. If the case made by plaintiff is one which depends on proper construction of an act of Congress, with the contingency of being sustained by one construction and

---

**2.** In view of the historical fact that the site of the burial grounds was not included within the area transferred to the United States under the Louisiana Purchase Treaty, that treaty could hardly have any bearing upon the issues. As is well known, Louisiana's "Florida Parishes" became a part of the United States only after rebellion, declaration of independence by the short-lived West Florida Republic and petition to the United States for annexation.

defeated by another, then it is one arising under the laws of the United States. *Northern P. R. Co. v. Soderberg,* 188 U.S. 526, 23 S.Ct. 365, 47 L.Ed. 575 (1903); *Wheeldin v. Wheeler,* 373 U.S. 647, 83 S.Ct. 1441, 10 L.Ed.2d 605 (1963). In the present case, several federal statutes will have to be interpreted to see whether they support plaintiff's claims and plaintiff's recovery will depend on this construction. This court finds that these claims are not unsubstantial, nor obviously frivolous and they find support in the rationale of *Oneida,* supra. Plaintiff states a cause of action under federal law. Further, the court makes no determination as to the pendent state law claims at this time.

The second issue raised by the court is whether the State's 11th Amendment immunity has been waived. Two early cases held that 28 U.S.C. § 1362 did not abrogate a state's sovereign immunity, *Scholder v. United States,* 428 F.2d 1123 (9th Cir. 1970) and *Standing Rock Sioux Indian Tribe v. Dorgan,* 505 F.2d 1135 (8th Cir. 1974). Later in *Moe v. Confederated Salish & Kootenai Tribes, etc.,* 425 U.S. 463, 96 S.Ct. 1634, 48 L.Ed.2d 96 (1976), the Supreme Court considered whether an action brought by a tribe was barred by 28 U.S.C. § 1341, which prohibits district courts from enjoining collection of state taxes. The court held:

"... the legislative history of § 1362, though by no means dispositive, suggests that in certain respects tribes suing under this section were to be accorded treatment similar to that of the United States had it sued on their behalf. Since the United States is not barred by § 1341 from seeking to enjoin the enforcement of a state tax law, *Department of Employment v. United States* supra, we hold that the Tribe is not barred from doing so here." 96 S.Ct. at 1641–2.

Although *Moe* did not consider 11th Amendment immunity, directly, some district courts, *Confederated Tribes of Colville v. States of Wash.,* 446 F.Supp. 1339 (E.D. Wash.1978) and *Aquilar v. Kleppe,* 424 F.Supp. 433 (D.Alaska 1976), have used the rationale of *Moe* to hold that § 1362 waives

a state's immunity. See also *Oneida Indian Nation of N. Y. v. State of N. Y.,* 520 F.Supp. 1278 (N.D.N.Y., 1981) (Oneida II) which holds that Congress has intentionally abrogated the 11th Amendment immunity of the States in lawsuits by Indian tribes under 28 U.S.C. § 1362 to protect and enforce alleged tribal property rights.

■ On that authority the court concludes that the Congress in § 1362 has waived Louisiana's sovereign immunity and the State is amenable to suit in this action.

The last issue to be determined is whether the Tribe's action should be stayed until Charrier's state court action has been completed.

■ In *Will v. Calvert Fire Insurance Co.,* 437 U.S. 655, 98 S.Ct. 2552, 57 L.Ed.2d 504 (1978), the court held that a district court is under no compulsion to exercise jurisdiction where the controversy may be settled more expeditiously in the state court. This decision is committed to the sound discretion of the district judge. Under the factors set out in *PPG Industries, Inc. v. Continental Oil Company,* 478 F.2d 674 (5th Cir. 1973), the court will stay Civil Action No. 81–1009. Charrier's original petition was filed in 1974 and since that date, the litigation has proceeded throughout the Louisiana appellate system on two occasions on interlocutory matters. The Supreme Court of Louisiana has specially appointed a trial judge in this matter. Trial was previously set for January 18, 1982 before the Tribe was ordered to intervene. The matter is much more advanced and can be more expeditiously handled in the state courts.

For the foregoing reasons, the motion to remand in Civil Action No. 81–1010 is hereby GRANTED.