Robert DOE, Individually and on Behalf of His Minor Son, Tom Doe and Susan Doe

v.

ARMOUR PHARMACEUTICAL COMPANY, Administrators of the Tulane Educational Fund, Tulane Medical School and Dr. W. Abe Andes, et al.

Civ. A. Nos. 93–0514, 93–1474, 93–1475, 93–1476, 93–2069, 93–2142, 93–2331 and 93–2425.

United States District Court, E.D. Louisiana.

Sept. 21, 1993.

---

**3.** The language of Rule 42(b) of the Federal Rules of Civil Procedure is almost identical.

Thomas Wilson Mull, and Wilson C. Krebs, Mull & Mull, for plaintiff Robert Doe in Civ. A. No. 93–0514.

James B. Irwin, Robert Ellsworth Durgin, Kim E. Moore, Montgomery, Barnett Law Firm, for defendant Armour Pharmaceutical Co. in Nos. 93–0514, 93–1474, 93–1475, 93–1476, 93–2142 and 93–2331.

Wilson C. Krebs, and Thomas Wilson Mull, Mull & Mull Law Firm, for plaintiffs D.P. Smith and G.P. Smith in Civ. A. No. 93–1474.

Jonathan Christopher McCall, Charles L. Chassaignac, Mary Laura Meyer, Chaffe, McCall Law Firm, for defendant Miles, Inc., Incorrectly referred to as Cutter Biological, a Div. of Miles, Inc. in Civ. A. Nos. 93–1474, 93–1475 and 93–1476.

Wilson C. Krebs, Thomas Wilson Mull, James Allison Marchand, Jr., Mull & Mull Law Firm, for plaintiff R.P. Smith in Civ. A. No. 93–1475.

Wilson C. Krebs, Thomas Wilson Mull, James Allison Marchand, Jr., Mull & Mull Law Firm, for plaintiff D.H. Smith in Civ. A. No. 93–1476.

Thomas Wilson Mull, James Allison Marchand, Jr., Mull & Mull Law Firm, for plaintiffs T.C. Smith and P.C. Smith in Civ. A. No. 93–2069.

Jonathan Christopher McCall, Charles L. Chassaignac, Mary Laura Meyer, and Elizabeth L. Coxe, Chaffe, McCall Law Firm, for

defendants Cutter Biological, a Div. of Miles, Inc. and Miles, Inc. in Civ. A. No. 93–2069.

Roger Scott Bernstein, Bernstein & Bernstein, for plaintiffs John Roe and Jane Roe.

Jonathan Christopher McCall, Charles L. Chassaignac, Mary Laura Meyer, and Elizabeth L. Coxe, Chaffe, McCall Law Firm, for defendant Miles, Inc. in Civ. A. Nos. 93–2142 and 93–2425.

Susan Faye Clade, Judy Perry Martinez, Robert L. Redfearn, Isaac Jackson, Jr., Simon, Peragine Law Firm for defendant Alpha Therapeutic Corp.

Thomas Wilson Mull, James Allison Marchand, Jr., Mull & Mull Law Firm, for plaintiffs W.E. Smith and R.G. Smith in Civ. A. No. 93–2331.

Thomas Wilson Mull, James Allison Marchand, Jr., Mull & Mull Law Firm, for plaintiff K.D.D. Smith in Civ. A. No. 93–2425.

## ORDER AND REASONS

MENTZ, District Judge.

This matter is before the Court on motions to remand to state court or alternatively to stay proceedings filed by plaintiffs in each of several lawsuits involving hemophiliacs infected with the HIV virus. The Court took these motions under submission without oral argument and now GRANTS the motions to remand as follows.

## I. THE PARTIES

Each of these eight lawsuits [1] has been brought on behalf of hemophiliacs and their relatives against Tulane Medical School [2] (Tulane), Dr. W. Abe Andes (Dr. Andes), and a varying combination of three alleged manufacturers of a blood clotting factor used to treat hemophilia.

The hemophiliacs are children and are citizens of Louisiana [3], as are their relatives, who are bringing these suits on their behalf. The hemophiliacs and their relatives shall be referred to collectively as the plaintiffs.

Dr. Andes has allegedly been a citizen of North Carolina since August 1, 1992. However, at the time of the actions under consideration [4], Dr. Andes was living in Louisiana and was an employee of Tulane, which is a non-profit Louisiana corporation. Tulane and Dr. Andes shall be referred to collective-

---

1. *Robert Doe, individually and on behalf of his minor son, Tim Doe, and Susan Doe v. Armour Pharmaceutical Company, Administrators of the Tulane Educational Board, Tulane Medical School and Dr. W. Abe Andes, # 93–514;*

 *D.P. Smith and G.P. Smith v. Cutter Biological, A Division of Miles, Inc., Armour Pharmaceutical Company, Administrators of the Tulane Educational Fund, Tulane School of Medicine, and Dr. W. Abe Andes, # 93–1474;*

 *R.P. Smith, individually and on behalf of her minor son, K.J.C. v. Cutter Biological, A Division of Miles, Inc., Armour Pharmaceutical Company, Administrators of the Tulane School of Medicine, and Dr. W. Abe Andes # 93–1475;*

 *D.H. Smith, individually and on behalf of his minor son, J.M.H. Smith, and M.H. Smith v. Cutter Biological, A Division of Miles, Inc., Armour Pharmaceutical, Administrators of the Tulane Educational Fund, Tulane School of Medicine, and Dr. W. Abe Andes, # 93–1476;*

 *T.C. Smith, individually and on behalf of his minor son, T.D.C. Smith, and P.C. Smith v. Cutter Biological, A Division of Miles, Inc., Administrators of the Tulane Educational Fund, Tulane Medical School, and Dr. W. Abe Andes, # 93–2069;*

 *John Roe, Jane Roe, individually and as natural tutrix of her minor children Sally Roe and David Smith, and Jim Roe v. Cutter Biological, A Division of Miles, Inc., Armour Pharmaceutical Company, Alpha Therapeutics, Administrators of the Tulane Educational Fund; Tulane Medical School and Dr. W. Abe Andes, # 93–2142;*

 *W.E.A. Smith, individually and on behalf of his minor son, J.H.A. Smith, and R.G.A. Smith v. Armour Pharmaceutical Company, Administrators of the Tulane Educational Fund, Tulane School of Medicine, and Dr. W. Abe Andes, # 93–2331;*

 *K.D.D. Smith v. Cutter Biological, A Division of Miles, Inc., Administrators of the Tulane Educational Fund, Tulane School of Medicine, and Dr. W. Abe Andes, # 93–2425.*

2. Also the Administrators of the Tulane Educational Fund, which for purposes of simplicity will be referred to as "Tulane."

3. In one case the plaintiffs are in fact residents of Texas, although they were mistakenly alleged to be residents of Louisiana in their motion to remand, # 93–1476.

4. # 93–514 was filed on December 17, 1991 in Civil District Court and is the only one of these consolidated cases filed while Dr. Andes was still a citizen of Louisiana. However, as plaintiffs' claims are also against Tulane, a Louisiana corporation, under a respondeat superior theory, the question of fraudulent joinder is primarily addressed toward Tulane in the seven other cases.

ly on occasion as the medical defendants. Both Dr. Andes and Tulane qualify as health care providers under the Louisiana Medical Malpractice Act.

The three alleged "manufacturers" [5] of the blood clotting factors are Armour Pharmaceutical Company (Armour), Miles Inc.,[6] (Miles), and Alpha Therapeutics (Alpha), and shall be referred to collectively as defendant manufacturers. The blood clotting factors are Factorate and Factor VIII, which are processed by Armour, Koate, a product of Miles, and Profilate, of ATI.

Although the defendant manufacturers appear in different combinations in these cases, these variations have no bearing on the Court's ruling. It is relevant, however, that none of the defendant manufacturers is domiciled in the State of Louisiana nor has a principal place of business within Louisiana.

## II. THE FACTUAL BACKGROUND AND PROCEDURAL POSTURE

From 1979 through at least 1991, Tulane operated a clinic for the treatment of individuals who suffered from hemophilia, including plaintiffs. The clinic was known as the Louisiana Comprehensive Hemophilia Care Program and had as its director Dr. Andes, who was also the treating physician for the hemophiliacs in this case.

Plaintiffs allege the hemophiliacs were infected with the HIV virus, the causative agent of the condition known as AIDS, through the intravenous use of blood clotting factors prescribed by Dr. Andes in their treatment. Employing various negligence theories, plaintiffs allege that Dr. Andes knew or should have known the dangers inherent in this treatment, that he failed to warn plaintiffs whose consent was thus uninformed, that he failed to utilize or advise of alternative medical techniques that were safer, that he misrepresented the risks involved in the use of the blood clotting factors, and

that when these risks became obvious, he threatened to withhold access to any treatment if plaintiffs were to pursue legal remedies.

Plaintiffs further allege that Tulane, as the direct employer of Dr. Andes, is responsible for his actions under the theory of respondeat superior; and that Armour and Miles compensated Dr. Andes and were thus also responsible for his actions as their agent. Plaintiffs' have additional negligence and breach of implied warranty of fitness or merchantability claims against Tulane and the defendant manufacturers.

All eight of the cases before this Court were originally filed in the Civil District Court for the Parish of Orleans and timely removed to federal court for the Eastern District of Louisiana.

Similar cases pending in Civil District Court of the Parish of Orleans have been consolidated in Division "L", presided over by Judge Max N. Tobias, Jr.

At present, the case entitled *Gary W. Cross, et al. v. Cutter Biological, et al.,* # 91–9617 *(Cross),* is set for trial before Judge Tobias on October 5, 1993. Previously removed to federal court, *Cross* was likewise remanded to state court by Judge Peter Beer of the Eastern District of Louisiana, based on a ruling by Judge Martin Feldman in another related case, *Doe v. Cutter Biological,* 774 F.Supp. 1001 (E.D.La.1991).

In the instant case defendants vigorously argue that plaintiffs have fraudulently joined Tulane and Dr. Andes in an attempt to avoid federal jurisdiction. Contending the *Doe* decision was incorrect, defendants [7] go so far as to say,

> No judge on the bench of the United States District Court for the Eastern District of Louisiana has addressed all the issues raised by defendants in this case.

---

5. It is disputed whether any of these companies are "manufacturers" of the blood clotting factors, because according to defendant Miles, Inc., Factor VIII is a naturally occurring blood protein which is extracted from plasma and processed into a form which can be used to treat the abnormal bleeding episodes which occur in hemophilia.

6. Incorrectly captioned as Cutter Biological, A Division of Miles, Inc.

7. .E.g. at page 16 of Miles' Memorandum in Opposition, # 93–2425.

The plaintiff's statement that "The precise argument now presented by Cutter has previously been raised in fourteen separate proceedings in the Eastern District of Louisiana" is completely untrue.

Due to the emotional upheaval surrounding the circumstances of children suffering from AIDS, and equally important, due to the need to fill some of the interstices of Judge Feldman's ruling, the Court takes this occasion to amplify, though nevertheless to embrace the decision in *Doe*.

## III. THE DEFENDANTS' ARGUMENTS

The guideposts for removal were succinctly laid out in *Hayden v. Phillips Petroleum Co.*, 788 F.Supp. 285 (E.D.La.1992).

The burden is on the defendants, as the removing parties, to establish the existence of federal jurisdiction. *Dodson v. Spiliada Maritime Corp.*, 951 F.2d 40 (5th Cir. 1992). To prove fraudulent joinder, the defendants must demonstrate that the plaintiffs have no *possible* cause of action against the non-diverse defendant. *B., Inc. v. Miller Brewing Co.*, 663 F.2d 545 (5th Cir.1981). All ambiguities in the controlling law and all disputed questions of fact are to be resolved in favor of the non-removing party. *Carriere v. Sears, Roebuck & Co.*, 893 F.2d 98, 100 (5th Cir.), cert. denied, 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

It is within this framework that defendants' arguments must be addressed.

The main arguments in support of defendants' contention that Tulane and Andes are fraudulently joined are summarized as follows: 1) that plaintiffs have no possible cause of action against defendants where suit was filed prior to review by a medical panel expressly mandated by the Louisiana Medical Malpractice Act; 2) that the evidence pre-sented by plaintiffs' claims would not survive a motion for summary judgment; and 3) that *Doe* is incorrectly decided.

### A.

La.R.S. 40:1299.47(B)(1)(a)(i) states:

No action against a health care provider covered by this Part, or his insurer, may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section.

■ All of these cases were filed by plaintiffs prior to presenting their claims to a medical review panel. Defendants allege that because La.R.S. 40:1299.41 *et seq* provides for pre-suit review of the allegations against Tulane and Dr. Andes prior to commencement of an action in district court, these actions against Tulane and Dr. Andes are premature. Therefore, there exists diversity jurisdiction between plaintiffs and the manufacturing defendants, thus entitling them to remove the actions to this Court.[8] Defendants' argument is without merit.

Defendants' precise argument was made in *Erdey v. American Honda Co., Inc.* 96 F.R.D. 593 (M.D.La.1983), which the Court shall presently discuss at length. In that case plaintiff Erdey was severely injured in a one vehicle accident on a Honda motorbike. He filed suit in state court against the foreign manufacturer, the non-resident distributor, and the Louisiana seller of the motorbike. He also joined his attending Louisiana physicians and their insurer, alleging that their medical malpractice caused aggravation of the injuries sustained in the accident. Judgments of dismissal as to the foreign manufacturer and the Louisiana seller were entered by the state court upon Erdey's subsequent voluntary motion to dismiss them.

---

8. In *Barraza v. Scheppegrell*, 525 So.2d 1187 (La.App. 5th Cir.1988) the court held that a health care provider who failed to file a dilatory exception of prematurity prior to filing an answer waived the right to review of the claims against him by a medical review panel.

Therefore, defendants are incorrect in their corollary assertion that plaintiffs have violated the law, and thus have no cause of action, by commencing suit prior to review by a medical review panel. Obviously, as in *Barraza*, plaintiffs *may* bring the suit; it is then incumbent upon the defendant health care provider to raise the exception of prematurity. If the defendant fails to do so, plaintiff's case may proceed. Furthermore, as illustrated by *Barraza*, the manufacturing defendants' argument is particularly tenuous due its reliance on the legal maneuvering, or lack thereof, of the medical defendants.

Erdey's attending Louisiana physicians pled the provisions of the Louisiana Medical Malpractice Act, La.R.S. 40:1299.47, *supra*, and on appeal were dismissed without prejudice from the suit. Erdey then convened a medical review panel which found there were material issues of fact precluding a definite medical opinion, whereupon he again joined the Louisiana physicians. Shortly before trial Erdey entered into a settlement agreement with the Louisiana physicians, releasing all claims against them but reserving all rights against the distributor. The state court rendered judgment against the Louisiana physicians in accordance with the provisions of the settlement agreement, which had been jointly presented for court approval by the parties. A few days later, the non-resident distributor as sole remaining defendant, removed the action to federal court alleging diversity of citizenship as the basis for federal jurisdiction.

Addressing the timeliness of its removal, the distributor argued it had complied with 28 United States Code § 1446(b)[9] despite the fact that the action was initiated some five years earlier because the case first became removable only when the settlement was entered into with the medical defendants and judgment was rendered thereon.

Contrarily, Erdey argued in his motion to remand the very argument of manufacturing defendants in the instant cases: that because of Erdey's failure to comply with the medical review panel provisions of the La.R.S. 40:1299.47, he had no cause of action against the medical defendants at the time the action was first instituted, as established by the non-suit of the defendants by the state court of appeals. Thus, Erdey (and the manufacturing defendants in the instant cases) argued the non-diverse medical defendants were fraudulently joined and their presence could be ignored for determining federal diversity jurisdiction. Since Erdey had voluntarily dismissed the non-diverse seller of the motorbike on June 28, 1978, he argued the action became removable at that time, five and a half years previous to the distributor's removal.

Speaking for the court, with whom this Court agrees, Chief Judge John V. Parker rejected this argument as having surface appeal, nevertheless failing to stand close scrutiny. 96 F.R.D. at 596. In his analysis Judge Parker juxtaposed the import of dismissal upon sustaining a dilatory exception of prematurity as opposed to a peremptory exception of no cause of action. He then cited authority[10] that a malpractice petition which fails to allege the health care provider is not covered or that the matter has been presented to a medical review panel, although defective, still states a cause of action. He concluded that the allegations of the original petition, as here, clearly alleged facts which support a medical malpractice cause of action against the medical defendants; that the petition simply failed to comply with La.R.S. 40:1299.47(B); and that the original petition, although premature, nevertheless stated a cause of action against the medical defendants who thus were not fraudulently joined.

In a concerted effort to return to state court, Erdey then argued that if not upon the voluntary dismissal of the non-diverse seller, the case became removable upon the subsequent non-suit of the Louisiana physicians on October 3, 1979. Rejecting this argument, the court noted the jurisprudence[11] to be

9. 28 U.S.C. § 1446(b) provides in part: If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

In *Erdey*, the distributor removed the action ten days after the judgment approving the settlement agreement had been entered.

10. *Chivleatto v. Divinity*, 379 So.2d 784, 786 (La.App. 4th Cir.1979), *Travasos v. New Orleans Metairie Hospital Foundation*, 381 So.2d

878 (La.App. 4th Cir.1980). Cf., *Jarrell v. American Medical International, Inc.*, 552 So.2d 756 (La.App. 1st Cir.1989), *writ denied*, 556 So.2d 1282 (La.1990). However, all ambiguities in the controlling law are to be resolved in favor of the non-moving party, *Carriere*, 893 F.2d at 100.

11. Citing *Great Northern Railway Co. v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918) which held:

"The obvious principle of these decisions is that, in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint determine the status with

long and uniform to the effect that a case may become removable only by the voluntary action of the plaintiff, indeed, that removability is to be determined from the allegations of the complaint, not from any action or anticipated defense by the defendants. Here the record clearly showed that the 1979 dismissal of the Louisiana physicians was not the result of voluntary action by Erdey in district court, but rather upon their non-suit by the state court of appeals. Thus, the case was not removable even upon non-suit of the medical defendants.

From the preceding analysis, it is evident to the Court the manufacturing defendants in these cases have failed to demonstrate that plaintiffs have no *possible* cause of action against the non-diverse medical defendants. Clearly, a state court's sustaining of a dilatory exception of prematurity would amount to a non-voluntary dismissal of the medical defendants. Thus, given the facts alleged in these cases, whether a dilatory exception of prematurity has been filed or even sustained in state court, plaintiffs have stated a cause of action against the medical defendants sufficient to destroy diversity and thereby preclude removal, despite their having commenced suit prior to a medical review of their claims.[12]

## B.

Plaintiff's final argument in the *Erdey* case also relates to another major argument of

respect to removability of a case, arising under a law of the United States, when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, in invitum, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses toward a conclusion."

This addresses the manufacturing defendants' argument that the *Doe* decision unfavorably prejudices nonresident defendants. As to defendants' public policy concerns, see *Barraza*, 525 So.2d at 1188 ("This potential conflict between the Code of Civil Procedure [art. 926 providing that all objections which may be raised through the dilatory exception, such as prematurity, are waived unless pleaded therein] and the Medical Malpractice Act should be resolved in favor of

defendant manufacturers before this Court. Erdey argued the distributor's removal was improper because no judgment had been rendered dismissing the Louisiana physicians, contending the state court judgment pursuant to the settlement agreement was not one of dismissal, but rather a money judgment. The court held that merely entering the settlement agreement was an act which made the case removable:

> Where plaintiff, by his voluntary act[13] has definitely indicated his intention to discontinue the action as to the non-diverse defendant, plaintiff has indicated that he no longer desires to dictate the forum and the case then becomes removable under 28 U.S.C. § 1446(b). *The technicality of how plaintiff's intention is expressed is of no moment—it is the expression of the intent by plaintiff which makes the case removable.* Emphasis added; citation omitted. 96 F.R.D. at 598.

▆ In each of the instant cases the medical review panel has been waived[14] by stipulation, although at the time of removal the stipulations were in various stages of completion. Defendants argue that by entering into these stipulations, plaintiffs have conceded their claims would not sustain a motion for summary judgment and thus have no possibility of recovering against the medical defendants. Proffered as independent proof of fraudulent joinder and therefore grounds for

the Code.") and *Everett v. Goldman*, 359 So.2d 1256 (La.1978).

12. Accord, *Doe*, "Procedural prematurity is not a conceptually accurate measure of fraudulent joinder if the claim theory asserted can be said to have plausible substantive merit. Prematurity does not trump viability." 774 F.Supp. at 1004.

13. "The voluntary-involuntary rule is an outgrowth of the well-established notion that *plaintiff controls the choice of forum and the form of the action throughout the proceedings.*" *Erdey*, 96 F.R.D. at 598. Emphasis added.

14. La.R.S. 40:1299.47B(1)(c) states: By agreement of both parties, the use of the medical review panel may be waived.

This is further indication that La.R.S. 40:1299.-47(B)(1)(a)(i) ["No action against a health care provider . . ."] is not as strictly construed as the manufacturing defendants maintain.

removal, the manufacturing defendants have misconstrued both the import of the stipulations and the law.

To begin with, for purposes of this decision it is only relevant that stipulations have now been judicially approved in all but one of these cases.[15] In these the parties have agreed to waive the medical review panel and to stipulate that were the panel to meet and render an opinion,

> the opinion of the medical review panel would be favorable to Tulane and Dr. Andes in that each defendant would be found by the medical review panel to have complied with the prevailing standards of care, ... that the parties agree that the decision of the Medical Review Panel is not conclusive, ... and that plaintiffs specifically do not agree with the findings of the decision of the medical review panel, and reserve all rights to proceed against Tulane Medical Center and Dr. Andes.[16]

The manufacturing defendants have cited *Galloway v. Baton Rouge General Hospital,* 602 So.2d 1003, 1007 (La.1992) wherein the Louisiana Supreme Court described the findings of a medical review panel as "crucial evidence." The findings may indeed be crucial, but as held by *Derouen v. Kolb,* 397 So.2d 791 (La.1981) and *Renegar v. Matthews,* 456 So.2d 690 (La.App. 5th Cir.1984), *writ denied* 460 So.2d 608, the findings are not determinative.

Furthermore, the plain language of the stipulation is that "the decision of the medical review panel is not decisive", the plaintiffs "specifically disagree with the findings" and "reserve all rights to proceed against" the medical defendants. Hardly a concession of no liability nor a "voluntary act" by which plaintiffs "have definitely indicated their intention to discontinue the actions as to non-diverse defendants"[17], the stipulations are closer to "an expression of the intent of plaintiffs" to indeed go forward against the medical defendants. Certainly the pleadings contain not a scintilla of evidence otherwise.

 In addition, the manufacturing defendants boldly assert that plaintiffs claims could not survive a motion for summary judgment. The Court suggests reference to *Moore v. Armour Pharmaceutical,* 1990 WL 369571 (M.D.Fla.1990) where plaintiff's similar claims overcame such a motion. But the manufacturing defendants are most misguided in their assertion that plaintiffs claim must survive a motion for summary judgment. It is true that the Court may look to facts as established by summary judgment evidence, such as affidavits and depositions, but *Carriere v. Sears, Roebuck & Co.*[18] only "endorsed a summary judgment-*like* procedure for disposing of fraudulent joinder claims." It did not require the Court to apply the standard for summary judgment to such a claim. Indeed, "no possibility" of a cause of action is a considerably greater burden for defendants to prove than no material facts at issue.

 Nevertheless, without attempting to rule on the merits of a motion yet extant, the Court finds plaintiffs in the instant cases to have introduced sufficient deposition evidence of medical testimony to rise above the

---

15. In 93–2142, which was filed in Civil District Court on May 17, 1993, counsel have thus far only reduced to writing their confirmation of an agreement "to waive the Medical Review Panel ... and that trial shall not be set for at least one year." See Exhibit A of Memorandum in Support of Motion to Remand. They have however agreed in principle to substantively the exact language of the other stipulations as indicated by a draft telecopied to the Court on September 17, 1993. In a letter to Mr. Roe's counsel attached to the draft, counsel for defendant stated, "It is our intent, once the Stipulation is executed and signed by the court, to withdraw the Exception of Prematurity which has recently been continued without date."

16. This is a portion of the precise language of the stipulation judicially approved by Judge Max To-

bias in each of these cases, except # 93–2142 mentioned in footnote 15, as per letter from defense counsel Philip S. Clark to the Court, dated September 17, 1993. The stipulations further provide that defendants do not waive any other privilege afforded by La.R.S. 40:1299.47, including the limitation of liability, that the decision is admissible into evidence and shall be afforded the same weight and consideration as if it represented the opinion of a convened Medical Review Panel.

17. *Erdey,* 96 F.R.D. at 598.

18. At 893 F.2d 98, 100 (5th Cir.), cert. den., 498 U.S. 817, 111 S.Ct. 60, 112 L.Ed.2d 35 (1990).

level of "mere allegations" in their claims against the medical defendants and to defeat defendant manufacturers' contention there is no possibility of a cause of action against the medical defendants. The Court finds that defendants have failed to establish an independent basis for fraudulent joinder of the medical defendants.[19]

## C.

In their oppositions to this motion the manufacturing defendants vehemently argued that *Doe v. Cutter*, 774 F.Supp. 1001, and its progeny[20] were incorrectly decided[21]. By his ruling in *Doe*, Judge Feldman may have used a different road map, and saved precious time under the circumstances, taking an occasional shortcut here or there. Nevertheless, his ultimate destination was precisely the same as the Court's in these cases. *Charrier v. Bell*, 547 F.Supp. 580 (M.D.La.1982).

In view of the foregoing, plaintiffs' motions to remand are **GRANTED**.

---

**19.** The Court need not but nevertheless addresses the manufacturing defendants' arguments 1) regarding the point in time at which the Court must evaluate the removability of a case. 28 U.S.C. § 1447(c) provides in part: If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded. 2) in 93–1476, where it appears the medical defendants have been named but not served, the Court adopts the reasoning of *Aydell v. Sterns*, 677 F.Supp. 877 (M.D.La.1988) wherein plaintiff's petition to withhold service as to the nondiverse defendants was held not to be a clear and definitive expression that he desired to terminate the action against them, and thus removal was not warranted, citing *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939), *Schwegmann Bros. Etc. v. Pharmacy Reports, Inc.*, 486 F.Supp. 606 (E.D.La.1980), and 1A Moore's Federal Practice § 0.168[3.–2–2].

Due to the granting of plaintiffs motion to remand, their alternative motions to stay the proceedings are moot.

**20.** Including the ruling to remand by Judge Arceneaux in *M.C. Smith, et al. v. Cutter Biological, et al.*, # 93–741, citing a letter from defense counsel therein stating "that because the plaintiffs and the two non-diverse defendants have waived the panel requirement, the jurisdictional basis that existed when we removed the action has now ceased to exist."

**21.** The manufacturing defendants cite on their behalf a former ruling of this Court *Maguar v. Synthes Ltd.*, 1992 WL 111199 (E.D.La.1992) which is readily distinguishable because therein the nondiverse defendants were merely contemplated; they had not yet been made parties to the suit as here. Similarly, *Freeman v. Avoy Hospital*, # 91–1986 (W.D.La.1991, unreported) by its very brief ruling provides no procedural history or insight into the facts of that case, states only that unserved defendants need not join in removal proceedings, and is poorly reasoned regarding the interplay of La.R.S. 40:1299.47.