Dale M. ERDEY

v.

AMERICAN HONDA CO., INC., et al.

Civ. A. No. 82–0911–A.

United States District Court, M.D. Louisiana.

Jan. 17, 1983.

Ben Guelfo, Due, Dodson, de Gravelles, Robinson & Caskey, Baton Rouge, La., for plaintiff.

Lawrence J. Duplass, Johnson & Duplass, New Orleans, La., for defendants.

## OPINION ON MOTION TO REMAND

JOHN V. PARKER, Chief Judge.

This action has been winding its way through the state courts for five years. It is now before this court on plaintiff's motion to remand to the 21st Judicial District Court for the Parish of Livingston, Louisiana. Defendant opposes the motion and the matter has been submitted on briefs, following oral argument.

Plaintiff was involved in a one vehicle accident (a Honda motorbike) and was severely injured. He instituted suit in state court against American Honda Motor Co., Inc., Honda Motor Co., Ltd., and G.N. Gonzales, Inc., the alleged distributor, manufacturer, and seller, respectively, of the motorbike alleging product defects, and he also joined his attending physicians, Dr. Allen Jackson—Dr. Richard L. Bolton, Ltd., Allen Jackson, M.D. and their insuror, St. Paul Fire & Marine Insurance Co., alleging that their medical malpractice caused aggravation of the injuries sustained in the accident.

Plaintiff subsequently voluntarily moved to dismiss G.N. Gonzales, Inc., a Louisiana resident, and Honda Motor Co., Ltd., a foreign corporation not doing business in Louisiana, and judgments of dismissal as to those defendants were entered by the state court.

The medical defendants pled the provisions of the Louisiana Medical Malpractice Act, LSA–R.S. 40:1299.47, which require that medical malpractice claims against qualified health care providers shall first be submitted to a medical review panel prior to instituting suit. Although the district court declined to enforce the statute, the Louisiana Court of Appeal, by writ, reversed the district court and dismissed the medical defendants without prejudice. *Erdey v. American Honda Motor Company, Inc., et al*, No. 12, 105 (La.App. 1st Cir. Oct. 3, 1979).

Plaintiff then convened a medical review panel which found that there were material issues of fact not requiring expert opinion and that the disputed issues of fact did not permit a definite medical opinion. Accordingly, plaintiff again joined the medical defendants.

Shortly before trial in the state court, plaintiff entered a "Restrictive Receipt, Release and Indemnity Agreement" with the medical defendants. This agreement provides, in substance, that in consideration of the sum of $200,000.00, plaintiff releases

the medical defendants, reserving all rights against American Honda Motor Co., Inc., the sole remaining defendant. The agreement provides, inter alia, that plaintiff does:

"RELEASE AND DISCHARGE FOREVER ... [the medical defendants] ... the Louisiana Patient's Compensation Fund, ... of and from any and all demands, liability, damages, actions, costs, causes of action, suits at law or in equity, of whatsoever kind or nature including but not limited to, all claims and rights of action, in tort, in malpractice, in contract or otherwise, for or because of any matter or thing done or admitted to be done or suffered to be done by any, some or all of the PARTIES RELEASED prior to and including the date hereof and more particularly for and because of the loss of Dale M. Erdey's left leg and all damages and injuries incurred or suffered by Dale M. Erdey, present, past and future, including—but without limitation—all of those damages recited in the Petition filed in the suit ..."

The settlement agreement also contains specific authorization and an instruction to the attorney for plaintiff, "to dismiss any and all pending actions which may now exist against" the medical defendants, reserving all rights against defendant, The America Honda Company.

The parties presented a joint petition for court approval of the settlement and on September 24, 1982, the state court granted judgment approving the settlement agreement and rendering judgment against the medical defendants in accordance with its provisions.

On October 4, 1982, American Honda removed the action to this court alleging diversity of citizenship between it and plaintiff as the basis for federal jurisdiction. 28 U.S.C. § 1332, § 1441(a). Plaintiff's motion to remand followed.

Plaintiff is a citizen of Louisiana and American Honda is a corporation domiciled in California, having its principle place of business in California. All the medical defendants and G.N. Gonzales were citizens of Louisiana. Defendants' theory is that its petition for removal was timely under 28 U.S.C. § 1446(b) despite the fact that the action was initiated some five years earlier, because the action did not become removable until all defendants who were of non-diverse citizenship with plaintiff were dismissed and that the removal petition was filed within thirty days of that time. Section 1446(b) provides in part:

"If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable."

Defendant argues that the case first became removable only when the settlement was entered into with the medical defendants and judgment was rendered thereon.

Plaintiff argues that the action first became removable in 1979 when the Court of Appeal dismissed the medical defendants without prejudice. Plaintiff also argues that even if the action did not become removable at the time of the non-suit against the medical defendants, they were all "fradulently" joined and, as such, the case was removable from the time G.N. Gonzales, Inc. was dismissed. Finally, plaintiff suggests removal is not proper because no judgment has been rendered dismissing the medical defendants as a result of the settlement agreement, pointing out that the state court judgment is not one of dismissal but rather, a money judgment.

I.

## FRAUDULENT JOINDER

Plaintiff earnestly contends that because of his failure to comply with the medical review panel provisions of the Louisiana statute, he had no cause of action against the medical defendants at the time the action was first instituted and that the non-suit of these defendants by the Louisiana Court of Appeal establishes that. Thus,

plaintiff argues that these non-diverse defendants were fraudulently joined and under the jurisprudence, their presence could have been ignored for federal diversity jurisdiction. Since plaintiff voluntarily dismissed the other non-diverse defendant, G.N. Gonzales, Inc., on June 28, 1978, plaintiff argues that this action became removable at that time. If plaintiff is correct, then the thirty day period for removal has long since expired and the removal petition is too late. 28 U.S.C. § 1446(b).

Fraudulent joinder is a judicially created theory predicated upon the inherent authority of a federal court to protect its own jurisdiction. Since the Congress has, by statute, granted the right to defendants in certain state court actions to remove the action to federal court, 28 U.S.C. § 1441(a), the federal courts have the power and the duty in protecting their jurisdiction, to inquire into and to ignore joinder of parties defendant against whom no real cause of action is alleged and who are joined in order to defeat federal jurisdiction. *Picquet v. Amoco Production Co.,* 513 F.Supp. 938 (M.D.La.1981); *Chevron U.S.A., Inc. v. Aquillard,* 496 F.Supp. 1038 (M.D.La.1980) and authorities therein discussed. The test of fraudulent joinder is whether arguably there is a reasonable basis for predicting that the state law might impose liability on the facts alleged. *Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172 (5th Cir.1968).

Here plaintiff alleges that since the state court dismissed the medical defendants, it is obvious that he had no cause of action against them. The argument has surface appeal, but it does not stand close scrutiny.

The Louisiana statute, LSA–R.S. 40:1299.47B, provides, in part,

"... No action against a health care provider covered by this Part ... may be commenced ... before the ... complaint has been presented to a medical review panel..."

As noted above, the original petition in this case contains no allegations relative to coverage of the defendants or presentation to a medical review panel. Louisiana's courts hold that under the statute, a complaint must allege either that the health care provider is not covered or that the claim has been presented to a medical review panel and further hold that failure to so allege subjects the petition to a dilatory exception of prematurity. *Everett v. Goldman,* 359 So.2d 1256 (La.1978); *Chivleatto v. Divinity,* 379 So.2d 784 (La.App. 4th Cir. 1979); *Dufrene v. Duncan,* 371 So.2d 1215 (La.App. 4th Cir.1979); *Desselles v. Brumfield,* 386 So.2d 191 (La.App. 4th Cir.1980).

Under Louisiana procedure, where a dilatory exception pleading prematurity is sustained, the suit is to be dismissed (La.C. C.P. Art. 933) and it is improper to sustain such an exception in a malpractice case and order the proceedings stayed pending presentation to a medical review panel. *Desselles v. Brumfield,* supra. Dismissal is also the result when a peremptory exception of no cause of action is sustained (La.C.C.P. Art. 934) but there is a vast difference between the dismissals. If the action is premature, the suit is dismissed without prejudice, or as of non-suit, while if the petition states no cause of action, the suit is dismissed with prejudice, as an adjudication on the merits. The Louisiana courts have specifically held that the exception of no cause of action is not a proper pleading to interpose against a malpractice petition which does not comply with LSA–R.S. 40:1299.47(B); plaintiff nevertheless states a cause of action and the dilatory exception of prematurity is the correct pleading. *Travasos v. New Orleans Metairie Hospital Foundation,* 381 So.2d 877 (La.App. 4th Cir. 1980). Indeed, in this very action, the Court of Appeal of Louisiana, First Circuit, noting in its unpublished opinion that the medical defendants had filed exceptions and also a motion for summary judgment, commented:

"... The latter [motion for summary judgment] may be more properly classified as a dilatory exception of prematurity, having as its basis the proposition that there is no allegation in the plaintiff's petition that his complaint has been re-

viewed by a medical panel as contemplated by LSA–R.S. 40:1299.47 . . . "

The Court of Appeal specifically dismissed the suit "without prejudice," *Erdey v. The American Honda Company, Inc., et al,* No. 12,105, (La.App. 1st Cir. October 3, 1979.)

Although there is language in some Louisiana decisions to the effect that a malpractice petition which does not allege that the health care provider is not covered or that the matter has been presented to a medical review panel, fails to state a cause of action, *Dufrene v. Duncan,* supra, later cases have made it clear that such a petition, although defective, does state a cause of action, *Chivleatto v. Divinity,* 379 So.2d, at 786; *Travasos v. New Orleans Metairie Hospital Foundation,* 381 So.2d, at 878.

■ The allegations of the original petition clearly allege facts which support a medical malpractice cause of action against the medical defendants; it simply fails to comply with LSA–R.S. 40:1299.47(B). The court therefore concludes that the original petition, although premature, nevertheless stated a cause of action against the medical defendants. Thus they were not fraudulently joined and the action could not have been removed immediately following dismissal of G.N. Gonzales, Inc.

## II.

### NON–SUIT OF THE MEDICAL DEFENDANTS

Plaintiff next argues that this action first became removable on October 3, 1979, when the Court of Appeal dismissed the medical defendants, as of non-suit. Since there were no longer non-diverse parties in the action, plaintiff argues that it should have been removed within thirty days from that date.

■ While 28 U.S.C. § 1446(b) authorizes removal of a case not initially removable, within thirty days of the time it becomes removable, the jurisprudence is long and uniform to the effect that a case may become removable only by the voluntary action of the plaintiff. In *Great Northern Railway Co. v. Alexander,* 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918), the Supreme Court discussed decisions which apply the familiar rule that removability is to be determined from the allegations of the complaint, not from any action or anticipated defense by the defendants, and held:

> "The obvious principle of these decisions is that, in the absence of a fraudulent purpose to defeat removal, the plaintiff may by the allegations of his complaint determine the status with respect to removability of a case, arising under a law of the United States, when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case non-removable when commenced shall afterwards become removable depends not upon what the defendant may allege or prove or what the court may, after hearing upon the merits, in invitum, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses toward a conclusion."

38 S.Ct. at 239. See also *Louisville & Nashville Railway Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Lathrop, Shea & Henwood Co. v. Interior Construction and Improvement Co.,* 215 U.S. 246, 30 S.Ct. 76, 54 L.Ed. 177 (1909); *Self v. General Motors Corp.,* 588 F.2d 655 (9th Cir.1978).

■ Here the record clearly shows that the 1979 dismissal of the medical defendants was not the result of voluntary action on behalf of plaintiff; on the contrary, the record shows that plaintiff actively opposed dismissal. This court therefore concludes that the action did not become removable upon dismissal of the medical defendants in 1979. *Weems v. Louis Dreyfus Corp.,* 380 F.2d 545 (5th Cir.1967).

## III.

### NO FORMAL JUDGMENT OF DISMISSAL

As we have noted, plaintiff has entered a settlement agreement with the medical de-

fendants in which he specifically releases them, agrees to hold them harmless and specifically authorizes and instructs his attorney to dismiss the action against them. Clearly entering the settlement agreement constitutes voluntary abandonment by plaintiff of the action as to these defendants. Had plaintiff amended the petition so as to dismiss them or presented a motion to dismiss to the state court, the cause clearly would have then become removable, *Kilpatrick v. The Arrow Co.,* 425 F.Supp. 1378 (W.D.La.1977). There was no amendment here nor was there any judgment of dismissal.

The medical malpractice statute establishes a patient's compensation fund which is available to pay claims in excess of $100,-000 (up to a maximum of $500,000), while the qualified health care provider is self-insured or purchases malpractice insurance covering the underlying $100,000. LSA–R.S. 40:1299.44. Where a settlement agreement calls for payment of funds from the patient's compensation fund, LSA–R.S. 40:1299.44(C) requires that the agreement be submitted to the court for approval. The agreement here called for payment of $100,000 each, by the insurer of the medical defendants and the patient's compensation fund.

Upon joint motion of plaintiff, the medical defendants and the patient's compensation fund, the settlement agreement was submitted to the court for its approval. The court approved and entered judgment in accordance with the joint motion, ordering the medical defendants and the patient's compensation fund to pay to plaintiff the sum of $100,000 each. The only findings made by the court in the judgment approving the settlement were that plaintiff "fully understands and desires the settlement proposal" and that, "the said settlement is fair and proper." The consent judgment specifically authorizes plaintiff to "execute a binding Receipt, Release and Indemnity Agreement" in favor of the medical defendants and the fund. On the same day that the judgment was signed, plaintiff executed a full and complete release in favor of the medical defendants.

Plaintiff now argues that since judgment was rendered against the medical defendants and no judgment of dismissal has been entered, they are still parties and that their presence in the suit prohibits its removal. Plaintiff equates the consent judgment entered here to a default judgment and cites jurisprudence holding that entry of a default judgment is not such a voluntary act of the plaintiff as to bring it within the "voluntary-involuntary" rule. *Burke v. General Motors Corp.,* 492 F.Supp. 506 (N.D.Ala.1980); *Higgins v. Yellow Cab Co.,* 68 F.Supp. 453 (N.D.Ill.1946).

There is a distinction between a consent judgment voluntarily requested by the plaintiff and defendant and a default judgment rendered upon motion of the plaintiff. Here the documents show that plaintiff has fully settled with and released all claims against the medical defendants. This settlement agreement authorizes plaintiff's counsel to request dismissal of the action against the medical defendants and it is clear that plaintiff has voluntarily discontinued his action against them. The mere fact that the patient's compensation fund was involved, thus necessitating court approval mandated by the statute, does not render the abandonment of the claim against the medical defendants any less a voluntary act on the part of the plaintiff. Had the fund not been involved in the settlement, there is no doubt that a judgment of dismissal would have been entered here. This court fails to see any distinction between a settlement agreement followed by judgment of dismissal and a settlement agreement followed by a consent judgment. In neither case has there been an adjudication upon the merits and in both cases the termination of the litigation is brought about by the voluntary act of the plaintiff.

■ The cases have consistently held that a voluntary dismissal or any other kind of voluntary discontinuance of the action as to the non-diverse defendants makes the action removable by the diverse defendant. The voluntary-involuntary rule is an outgrowth of the well-established notion that

plaintiff controls the choice of forum and the form of the action throughout the proceedings. *Great Northern Ry. Co. v. Alexander,* 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918). Where plaintiff, by his voluntary act has definitely indicated his intention to discontinue the action as to the non-diverse defendant, plaintiff has indicated that he no longer desires to dictate the forum and the case then becomes removable under 28 U.S.C. § 1446(b). *Powers v. Chesapeake & O. Ry. Co.,* 169 U.S. 92, 18 S.Ct. 264, 42 L.Ed. 673 (1898). The technicality of how plaintiff's intention is expressed is of no moment—it is the expression of the intent by plaintiff which makes the case removable. For example, in *Heniford v. American Motors Sales Corp.,* 471 F.Supp. 328 (D.S.C.1979), after the case had been tried in state court, counsel for plaintiff in closing argument to the jury, announced that plaintiff no longer desired a verdict against the non-diverse defendant and specifically asked the jury not to return a verdict against him. The other defendant was diverse in citizenship and promptly filed a removal petition. In holding that counsel's statement to the jury rendered the case removable, despite the fact that no formal judgment of dismissal was signed, the court commented:

> "Regardless of whether it be classified a dismissal, discontinuance, termination, or abandonment, plaintiffs extinguished their claim against the resident defendant in explicitly instructing the jury not to return a verdict against him." 471 F.Supp. at 335.

*Southern Pacific Co. v. Haight,* 126 F.2d 900 (9th Cir.1942), cert. denied 317 U.S. 676, 63 S.Ct. 154, 87 L.Ed. 542 (1942), presents another situation where plaintiff's intention to discontinue the action against non-diverse defendants was unusual and informal. There, plaintiff filed suit in state court against the railroad and two non-diverse employees. The employees were not served. The action was assigned for trial at plaintiff's request. When the case was called, plaintiff announced ready for trial and the railroad then filed a petition for removal. The court reasoned that plaintiff

by proceeding with trial against the railroad alone abandoned her right to a joint judgment and declined to remand. See e.g. *Preaseau v. Prudential Insurance Co. of America,* 591 F.2d 74 (9th Cir.1979); *Houpburg v. Kansas City StockYards Co. of Maine,* 114 F.Supp. 659 (W.D.Ms.1953); *Maxwell v. De Long,* 107 F.Supp. 166 (W.D. Ms.1952); *Hane v. Mid-Continent Petroleum Corp.,* 47 F.2d 244 (D.N.D.1931); *Fidler v. Western Coal & Mining Co.,* 33 F.2d 158 (W.D.Ark.1929).

So it is here, however plaintiff's settlement agreement—consent judgment is classified, plaintiff has extinguished his claim against the medical defendants. Settlement by plaintiff with all non-diverse defendants has been held to render the case removable. *Kilpatrick v. The Arrow Co.,* 425 F.Supp. 1378 (W.D.La.1977). Here plaintiff has voluntarily terminated the litigation against the medical defendants by entering the settlement agreement. Entry of the consent judgment adds nothing to the settlement as regards those defendants and entering the settlement agreement was an act which made the case removable under 28 U.S.C. § 1446(b), because those defendants have been removed from the action at the request of and with the consent of the plaintiff.

The motion to remand is hereby DENIED.