Carrol JOHNSON, et al.

v.

SCIMED, INC., et al.

No. CIV. A. 99–2352.

United States District Court,
W.D. Louisiana,
Shreveport Division.

March 15, 2000.

---

J. Patrick Hennessy, Peters Ward et al., Shreveport, LA, for Carrol Johnson, Mark Johnson, Billy Johnson, plaintiffs.

Lawrence W. Pettiette, Jr., Pettiette Armand et al., Robert G. Pugh, Jr., Pugh, Pugh & Pugh, Shreveport, Ernest P. Gieger, Jr., Sharon D. Smith, Pulaski Gieger & Laborde, New Orleans, LA, for Scimed Inc., Willis–Knighton Medical Center, Phillip Alan Rozeman, MD, Anil Chhabra, MD, Scimed Life Systems Inc., defendants.

### MEMORANDUM RULING

PAYNE, United States Magistrate Judge.

### Introduction

Doris Johnson died while being treated at Willis–Knighton Medical Center by Drs. Phillip Rozeman and Anil Chhabra. Mrs.

Johnson's surviving spouse and two sons filed a medical malpractice review panel petition against the medical center and both physicians. The next day, the Johnsons filed a products liability lawsuit in state court against Scimed, Inc., the manufacturer of stents which were used in the treatment of Mrs. Johnson. The plaintiffs also named the medical center, Dr. Rozeman and Dr. Chhabra as defendants in the state court suit, even though Louisiana law requires the completion of review panel proceedings before a civil action for malpractice may be commenced against a qualified health care provider.

Scimed removed the case to this court, citing diversity jurisdiction. *See* 28 U.S.C. §§ 1332 & 1441(a). The amount in controversy requirement is easily satisfied, and all parties agree that the plaintiffs and Scimed are citizens of different states. There is however, no dispute that two of the plaintiffs as well the medical center, Dr. Chhabra and Dr. Rozeman are all citizens of Louisiana, which would appear to destroy the complete diversity that is required by §1332.[1] Scimed nonetheless removed the case, asserting that the citizenship of the Louisiana health care providers could be ignored because they were "fraudulently joined." Scimed based the fraudulent joinder plea on Louisiana law that deems premature any malpractice action against the health care providers until completion of the review panel proceedings. The plaintiffs have put the fraudulent joinder claim to the test by filing a Motion to Remand (Doc.9) that is now before the court. For reasons that follow, the court finds that the medical malpractice defendants were not fraudulently joined. The Motion to Remand will be granted.

### Effect of Unserved Defendants

■ Two preliminary matters are raised by the parties and must be resolved before turning to the principal issue. First, at the time of removal, the Louisiana

1. Carrol Johnson and Billy Johnson are citizens of Louisiana. Mark Johnson is a citizen of Texas. Scimed is incorporated in and has its principal place of business in Minnesota.

defendants had not been served. Scimed cited this fact in its notice of removal as justification for the Louisiana defendants not joining in the notice of removal. Scimed is correct that only those defendants who are properly joined and served must join in the notice of removal. *See Getty Oil Corp. v. Insurance Co. of North America*, 841 F.2d 1254, 1262 (5th Cir. 1988).[2]

The second issue is whether diversity jurisdiction is affected by the citizenship of the unserved Louisiana defendants. The law is clear that "whenever federal jurisdiction in a removal case depends upon complete diversity, the existence of diversity is determined from the fact of citizenship of the parties named and not from the fact of service." *New York Life Insurance Co. v. Deshotel*, 142 F.3d 873, 883 (5th Cir.1998). Accordingly, the Louisiana malpractice defendants destroy diversity unless they were fraudulently joined.

**Fraudulent Joinder Issues**

This lawsuit presents a set of jurisdictional facts that is often faced by this court in same or similar situations. A Louisiana patient or her survivors file a products liability action against an out-of-state manufacturer of a medical device. The physician(s) who implanted the device and the hospital where the procedure was performed, usually Louisiana citizens, are also accused of malpractice. Louisiana law provides in La.R.S. 40:1229.47(B)(1)(a)(i) that:

> No action against a health care provider covered by this Part, or his insurer, may be commenced in any court of this state before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section and an opinion is rendered by the panel. By agreement of both parties, the use of the medical review panel may be waived.

A pending review panel action suspends prescription on the medical malpractice claims. Section 1299.47(A)(2)(a). Filing a request for panel-review of a claim against a health care provider also suspends the running of prescription against all joint and solidary tortfeasors. *Id.* But if it is ultimately determined that the health care provider is not liable, then there may not have been a suspension, and claims against persons once thought to be joint tortfeasors could be prescribed. *Spott v. Otis Elevator Co.*, 601 So.2d 1355, 1359–61 (La. 1992). Because of this and other concerns, the plaintiffs' counsel often take the cautious approach of not awaiting the outcome of the panel proceeding before commencing a timely civil action against the manufacturer of the medical device.

When the out-of-state manufacturer is the sole defendant in a civil action filed by a Louisiana plaintiff, the case is often removed and there is seldom any doubt that the court has subject matter jurisdiction based upon diversity. What inevitably happens in such cases is that the plaintiffs, and sometimes the defendant-manufacturer too, request that the court delay setting a federal trial date because it is anticipated that as soon as the medical review panel proceedings are completed the plaintiffs will file a motion to amend the complaint to add the non-diverse physicians and hospital. The court has discretion as to whether to permit that post-removal amendment, but leave is usually granted because the relevant factors point in that direction. *See Hensgens v. Deere & Co.*, 833 F.2d 1179 (5th Cir.1987) (setting forth factors that guide that discretion). *See also Cobb v. Delta Exports, Inc.*, 186 F.3d 675 (5th Cir.1999) (reaffirming *Hensgens* ). Among the principal reasons that the court permits joinder in that situation is the large and unnecessary burden on the plaintiffs and the state-federal judicial system of requiring separate trials in federal and state court on issues that are either identical or closely intertwined. Matters are even more unnecessarily complicated if the federal court forces the plaintiffs to file

---

**2.** Fraudulently joined parties, whether served or not, do not have to join in a notice of removal. *Farias v. Bexar County Board of Trustees*, 925 F.2d 866, 871 (5th Cir.1991.)

separate actions and the defendant in either action files a third-party demand against the defendant in the other case. That situation, which is not unusual, results in the plaintiffs and the defendants bearing the expense of separate litigation on the same issues and risks inconsistent results.

This case presents a slightly different situation; the plaintiffs immediately sued both the device manufacturer and the health care providers in the state court action without awaiting completion of the panel proceedings. The plaintiffs undoubtedly knew that the claims against the health care providers would be subject to dismissal for prematurity if the health care providers filed a dilatory exception on that grounds. "If an action against a covered health care provider has been commenced in the district court before the complaint has been presented to a medical review panel, an exception of prematurity must be sustained and the claimant's suit must be dismissed." *Yokem v. Sisters of Charity of the Incarnate Word,* 742 So.2d 906, 909 (La.App. 2d Cir.1999); *Dunn v. Bryant,* 701 So.2d 696, 699 (La.App. 1st Cir.1997), *writ denied,* 709 So.2d 752(La). As noted, Scimed removed, claiming fraudulent joinder of the health care providers.

Congress has provided a statutory framework for removal of certain cases where there is diversity of citizenship. Those statutes have been interpreted by the courts to require complete diversity; if any defendant is a citizen of the same state as any plaintiff then diversity is lacking. That strict requirement would, on its face, permit a plaintiff to name as a defendant any citizen of his home state and defeat removal. To prevent such shams, the "judge-imported concept of fraudulent joinder" has developed. *Bobby Jones Garden Apartments, Inc. v. Suleski,* 391 F.2d 172, 176 (5th Cir.1968). The doctrine permits the court to "ignore joinder of parties defendant against whom no real cause of action is alleged and who are joined in order to defeat federal jurisdiction." *Erdey v. American Honda Co., Inc.,* 96 F.R.D. 593, 595 (M.D.La.1983) (Parker, J.).

"A party will be considered fraudulently joined—and removal will be permitted—when the plaintiff has not or cannot state a claim for relief against that individual or entity under the applicable substantive law or does not intend to secure a judgment against that particular defendant." 13B Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure; Jurisdiction 3d* § 3723, pp. 631–36 (1998). The removing party (Scimed) bears the burden of establishing "that there is absolutely no possibility that the plaintiff will be able to establish a cause of action" against the non-diverse defendant. *Green v. Amerada Hess Corp.,* 707 F.2d 201, 205 (5th Cir.1983); *Ford v. Elsbury,* 32 F.3d 931, 935 (5th Cir.1994).

A substantial body of case law has developed in the Eastern District of Louisiana regarding whether a health care provider defendant is fraudulently joined if sued before completion of medical review panel proceedings. The first case on the issue, however, appears to be Judge Parker's decision in *Erdey.* The plaintiff filed suit against the manufacturers of a motorbike and health care providers whose malpractice was alleged to have aggravated the plaintiff's injuries. The manufacturer-defendants removed the case under the voluntary dismissal doctrine when, after several years of litigation in the state courts, the plaintiff settled with the non-diverse malpractice defendants. The plaintiff argued that the removal was untimely because the case should have been removed at commencement. The plaintiff took the position that, because review panel proceedings had not been completed at the time suit was filed, he had fraudulently joined the malpractice defendants. That is the same argument made by Scimed in this case. Judge Parker disagreed, holding that the allegations of the original state court petition clearly alleged facts which supported a medical malpractice *cause of action.* The malpractice petition was premature, but it nevertheless stated a cause of action. Thus, the malpractice defendants were not fraudulently joined.

Judge Parker carefully explained that Louisiana law requires that a dilatory exception of prematurity, if filed, must be granted and the case must be dismissed without prejudice when a malpractice suit is filed prior to completion of review panel proceedings. In contrast, a peremptory exception of no cause of action results in dismissal with prejudice. The claims against the medical defendants were merely subject to the former, not the latter, so it could not be said that the original petition did not state a cause of action. After all, if an exception of no cause of action had been filed it would have been properly denied.

The Eastern District has followed that rationale in a series of decisions. *Doe v. Cutter,* 774 F.Supp. 1001 (E.D.La.1991) (Feldman, J.) ("Procedural prematurity is not a conceptually accurate measure of fraudulent joinder if the claim theory asserted can be said to have plausible substantive merit. Prematurity does not trump viability."); *Perry v. McNulty,* 794 F.Supp. 606 (E.D.La.1992) (Arceneaux, J.) ("While plaintiff may be procedurally barred at this time from proceeding against the non-diverse defendants, she certainly has stated a cause of action that could impose liability on the Louisiana defendants. Thus, [the] claim of fraudulent joinder has no merit. . . ."); *McLin v. Surgitex, Inc.,* 1992 WL 67801 (E.D.La.1992) (Wicker, J.) (citing *Doe v. Cutter* with approval); *Doe v. Armour Pharmaceutical Co.,* 837 F.Supp. 178 (E.D.La.1993) (Mentz, J.) ("[W]hether a dilatory exception of prematurity has been filed or even sustained in state court, plaintiffs have stated a cause of action against the medical defendants sufficient to destroy diversity and thereby preclude removal, despite their having commenced suit prior to a medical review of their claims."); *Kelly v. Danek Medical, Inc.,* 1994 WL 321074 (E.D.La.1994) (Beer, J.) (refusing to find diversity when the medical malpractice defendants had not even been named as parties, but the petition revealed that a review panel proceeding had commenced against the non-diverse medical defendants); and

*Duffy v. Pendleton Memorial Methodists Hospital,* 1998 WL 273114 (E.D.La.1998) (Vance, J.) (following the cited line of cases and remanding claim removed by manufacturer of venous access device because non-diverse medical malpractice defendants were named, even though ·the latter claims may have been premature.) The plaintiffs urge this court to follow these cases.

In response, Scimed cites two unpublished decisions from judges in other divisions of the Western District of Louisiana. In *Comb v. American Medical Group,* 98 CV 1250, the court reviewed the Louisiana law which requires that malpractice actions commenced before completion of review panel proceedings be dismissed as premature. The court then equated that procedural defense with there being "no possibility that the state court would recognize a valid cause of action against the non-diverse defendants." This record does not reveal whether the *Comb* plaintiffs brought to the attention of the court the above-cited Middle District and Eastern District decisions, but none of those cases is mentioned in the *Comb* ruling. In *Boxie v. Gate Pharmaceuticals,* 98 CV 2142, a magistrate judge did mention the above-cited authorities and the ruling in *Comb.* Without explanation, he followed *Comb* and concluded that "at the time of removal there was no possibility that plaintiffs would have been able to establish a cause of action against the doctors in state court because the prerequisite condition of submitting their claims against the doctors to a medical review panel had not been fulfilled." The district judge adopted that recommendation without further explanation.

■ The undersigned agrees with Judge Parker's analysis in *Erdey* and the Eastern District decisions cited above. One reason for making that choice is that the fraudulent joinder doctrine is almost always described as requiring that the plaintiff not be able to state a "cause of action" against the non-diverse defendant or that the plaintiff have "no possibility of

recovery" against that defendant in state court. If that language is applied mechanically, there is no fraudulent joinder in this case. The medical defendants do have a potential prematurity defense that may be waived or, if exercised, only delays the plaintiff's right to litigate what is undeniably a "cause of action" for malpractice that gives rise to a "possibility of recovery" against the defendants.

If one gets away from the mechanical application of the standards and thinks about the reason for the judicial creation of the fraudulent joinder doctrine, the effort to remove also fails. The doctrine was designed to prevent plaintiffs from defeating removal by naming defendants solely because of their non-diverse citizenship when the plaintiff plainly had no legal right of recovery against that person or no real interest in obtaining a judgment against him. That cannot be said of these claims. It is undeniable that the plaintiffs have pleaded a medical malpractice cause of action and the court has no doubt that, once the procedural hurdles are cleared, these plaintiffs will pursue serious litigation against the malpractice defendants.

Finally, practical considerations weigh heavily in favor of finding no fraudulent joinder and remanding the case now. If the court were to find fraudulent joinder and maintain jurisdiction of the claim against Scimed, it would face the troublesome situation described at the beginning of this opinion. Once the medical review panel proceedings are completed, the plaintiffs will file a motion to amend this lawsuit to add the non-diverse doctors and hospital so that all of the closely interrelated claims arising out of the death of Mrs. Johnson can, quite sensibly, be litigated in one proceeding. As noted, a conscientious application of the *Hensgens* factors usually compels the court to permit the joinder of those defendants. That joinder then mandates that the entire case be remanded to state court. 28 U.S.C. § 1447(e); *Hensgens; Cobb.* This is not mere speculation. This court has seen that precise scenario unfold many times in similar cases. To refuse remand now simply results in the case proceeding needlessly through this court for months, expending the resources of the court and perhaps filling a spot on its trial calendar at the expense of the litigants in another case, when everyone knows that in all likelihood the case will eventually be remanded. These policy reasons do not permit the court to change the rules regarding jurisdiction, but they certainly may influence its choice of two reasonable lines of authority.

Accordingly, the Motion to Remand (Doc. 9) is GRANTED and this case, subject to the stay set forth in the accompanying Order, will be remanded to the First Judicial District Court, Caddo Parish, Louisiana.[3]

---

**3.** As the subject motion is not excepted in 28 U.S.C. § 636(b)(1)(A), nor dispositive of any claim on the merits within the meaning of Rule 72 of the Federal Rules of Civil Procedure, this ruling is issued under the authority thereof, and in accordance with the standing order of this court. Any appeal must be made to the district judge in accordance with Rule 72(a) and L.R. 74.1(W) and within the time permitted by the accompanying Order.