# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**
September 4, 2015

Lyle W. Cayce
Clerk

No. 14-31169

KALE FLAGG,

Plaintiff - Appellant

v.

STRYKER CORPORATION; MEMOMETAL INCORPORATED, USA,

Defendants - Appellees

Appeal from the United States District Court
for the Eastern District of Louisiana

Before DAVIS, ELROD, and HAYNES, Circuit Judges.

HAYNES, Circuit Judge:

In this case, which was removed from state court, Kale Flagg ("Flagg") appeals the dismissal of his complaint against Stryker Corporation ("Stryker") and Memometal Incorporated ("Memometal") (collectively, the "Manufacturing Defendants"), and five fictitious insurance companies.[1] We conclude that the

---

[1] Although the fictitious insurance companies remain parties in this case, there is no indication they were ever served or that they have appeared in any way. A judgment of dismissal is final and appealable under 28 U.S.C. § 1291 even if it does not dispose of claims made against a party that has neither been served nor appeared before the court. *See Nagle v. Lee*, 807 F.2d 435, 437–38 (5th Cir. 1987) (finding a judgment dismissing a case against only some of the defendants was final despite the fact that claims against "ABC Insurance Company" had never been addressed); *see also Landor v. Soc'y of The Roman Catholic Church of The Diocese of Lafayette*, No. 14-31097, 2015 WL 4114299, at *1 n.1 (5th Cir. July 9, 2015) (unpublished) (finding the district court's failure to mention fictitious insurance companies

No. 14-31169

district court lacked jurisdiction to decide this case and, therefore, without regard to its merits, we VACATE the district court's judgment and REMAND this case to the district court to remand to state court.

I.

Although we do not review the merits of the decision below, some background facts are helpful for understanding the jurisdictional determination. Flagg had surgery on his foot, utilizing the services of Dr. Denise Elliot, West Jefferson Medical Center, and the Foot and Ankle Center (collectively, "Medical Defendants") to implant a device manufactured by the Manufacturing Defendants.[2] He contends that the actions of both sets of defendants combined to cause him pain and necessitated further surgeries to correct problems caused by the Medical Defendants' alleged negligence and the Manufacturing Defendants' allegedly faulty device. Consistent with LA. REV. STAT. ANN. § 40.1299.47(B)(1)(a)(i), Flagg filed a medical malpractice complaint before a medical review panel. Despite the provisions in that statute requiring review as a prerequisite to suit, one week later, Flagg sued the Medical Defendants and the Manufacturing Defendants in Louisiana state court.

Although all of the Medical Defendants and Flagg as plaintiff were citizens of Louisiana, the Manufacturing Defendants removed the case on the basis of diversity jurisdiction. The Manufacturing Defendants alleged that they were citizens of other states and that the Medical Defendants were

---

in its judgment did not prevent that judgment from being final and appealable); *Fed. Sav. & Loan Ins. Corp. v. Tullos-Pierremont*, 894 F.2d 1469, 1471–74 (5th Cir. 1990) (following *Nagle* and collecting cases following this principle). We therefore do not mention these defendants again.

[2] There is some lack of clarity as to whether Stryker or Memometal or both manufactured the device in question. As it does not affect the outcome here, we will treat them both as the manufacturers for the sake of simplicity.

improperly joined such that their non-diverse citizenship could be discounted.[3] The district court implicitly agreed when it assumed jurisdiction over the case. It dismissed the Medical Defendants due to prematurity of the case against them and as improperly joined due to that prematurity. It ultimately resolved the case against Flagg on the merits, granting the defendants' motion to dismiss under Federal Rule of Civil Procedure 12(b)(6).

Flagg appealed, but failed to challenge the district court's jurisdiction. Nonetheless, subject-matter jurisdiction cannot be waived, so we requested supplemental briefing on this issue. We now conclude that the district court should not have discounted the citizenship of the Medical Defendants and that the court lacked diversity jurisdiction.

II.

Under the improper-joinder doctrine, a court should disregard the citizenship of non-diverse defendants where "there is no reasonable basis for predicting that the plaintiff might establish liability . . . against the in-state defendant[s]." *Badon v. R J R Nabisco Inc.*, 224 F.3d 382, 390 (5th Cir. 2000). The Manufacturing Defendants argue that the case against the Medical Defendants is premature in light of the still-pending medical review panel proceeding and, therefore, there is "no reasonable basis" to predict liability against the Medical Defendants. Flagg argues unconvincingly that his case against the Medical Defendants is not a medical malpractice case at all. In the district court, he argued that the case should be stayed until the medical review panel is concluded, at which time it should be remanded.

We begin with an examination of the Louisiana Medical Malpractice Act ("LMMA"). The LMMA governs claims for "any unintentional tort or breach of contract" brought against a qualified "health care provider." LA. REV. STAT.

---

[3] That the requisite amount in controversy is met is not contested here.

No. 14-31169

ANN. §§ 40.1299.41, 40.1299.47.  The Act requires a plaintiff to submit a claim to a medical review panel before bringing suit.  *Id*. § 40.1299.47(B)(1)(a)(i) ("No action against a health care provider covered by this Part . . . may be commenced in any court before the claimant's proposed complaint has been presented to a medical review panel established pursuant to this Section."). The Supreme Court of Louisiana has interpreted this provision to mean that a malpractice complaint against a covered health care provider should be dismissed without prejudice if it is filed "prior to submission of the complaint to a medical review panel and [before] the panel has rendered its expert opinion on the merits of the complaint, unless this requirement is waived by the parties' agreement." *Delcambre v. Blood Sys., Inc.*, 893 So. 2d 23, 27 (La. 2005); *see also Gele v. Binder*, 904 So. 2d 836, 838 (La. Ct. App. 2005); *Brister v. Sw. La. Hosp. Ass'n*, 624 So. 2d 970, 971–72 (La. Ct. App. 1993).

Medical review panels "consist of three health care providers who hold unlimited licenses to practice their profession in Louisiana and one attorney." LA. REV. STAT. ANN. § 40.1299.47(C).  The attorney serves as an advisory chairperson of the panel and has no voting power.  *Id.* § 40:1299.47(C)(1)(b)(2). The parties submit written evidence to the panel and, with the consent of two members of the panel, may subpoena documentary evidence or deposition testimony for submission.  *Id.* § 40:1299.47(D).  The panel may solicit its own evidence, and the parties have the right to convene the panel for questioning at an informal meeting before any report is issued.  *Id.* § 40:1299.47(E)–(F). The panel's "sole duty" is "to express its expert opinion as to whether or not the evidence supports the conclusion that the defendant or defendants acted or failed to act within the appropriate standards of care," by rendering one of three "expert opinions":

4

(1) The evidence supports the conclusion that the defendant or defendants failed to comply with the appropriate standard of care as charged in the complaint.

(2) The evidence does not support the conclusion that the defendant or defendants failed to meet the applicable standard of care as charged in the complaint.

(3) That there is a material issue of fact, not requiring expert opinion, bearing on liability for consideration by the court.

*Id.* § 40:1299.47(G).

The LMMA also contains some provisions meant to regulate the timeliness of the process. First, an attorney chairman for the medical review panel is supposed to be appointed within one year from the date on which a request for review is filed. *Id.* § 40:1299.47(A)(2)(c). If this does not happen within nine months of the initial filing, the board charged with overseeing this process is supposed to "send notice to the parties by certified or registered mail that the claim will be dismissed in ninety days unless an attorney chairman is appointed within one year from the date the request for review of the claim was filed." *Id.* Following that notice, if an attorney chairperson is not appointed and noticed within that first year, the claim is dismissed and the parties are deemed to have waived the use of the medical review panel. *Id.* After an attorney chairman is selected, an opinion should be rendered within one year, or else "suit may be instituted"; "[h]owever, either party may petition a court of competent jurisdiction for an order extending the twelve month period . . . for good cause shown." *Id.* § 40:1299.47(B)(1)(b). If the parties obtain an extension and no opinion is rendered within that time, "the medical review panel established to review the claimant's complaint shall be dissolved." *Id.* Finally, "[t]he filing of a request for a medical review panel shall suspend the time within which suit must be filed until ninety days after the claim has been dismissed" or the panel has been dissolved. *Id.* §§ 40:1299.47(A)(2)(c), (B)(3).

No. 14-31169

We have not previously addressed the interaction of the LMMA with diversity jurisdiction. In the past, district courts have diverged in their views. Some of those courts have found that the LMMA requires the presentation or exhaustion of administrative remedies before an LMMA claim is ripe to be heard in federal court. These cases dismiss non-diverse defendants as improperly joined and allow plaintiffs' claims against diverse defendants to proceed in federal court. *See, e.g.*, *Silvestrini v. Intuitive Surgical, Inc.*, No. 11-2704, 2012 WL 380283, at *5 (E.D. La. Feb. 6, 2012) (collecting cases for the proposition that federal courts "have denied remand when a plaintiff has failed to present malpractice claims against a non-diverse defendant to a medical review panel because the courts have found that such non-diverse defendants were improperly joined").[4]

Not all federal district courts have followed this logic. Some courts have reasoned that just because a claim is procedurally *premature* under Louisiana law does not mean "there is *no reasonable basis* for predicting that plaintiffs might establish *liability* . . . against the in-state defendants." *Badon*, 224 F.3d at 393 (emphasis added) (stating the standard for improper joinder); *Erdey v. Am. Honda Co.*, 96 F.R.D. 593, 596–97 (M.D. La. 1983) ("The court therefore concludes that the original petition, although premature, nevertheless stated a cause of action against the medical defendants. Thus they were not fraudulently joined . . . ."). On this side of the issue, many courts found no improper joinder of non-diverse defendants when a plaintiff's claims were

---

[4] *See also Jones v. Centocor, Inc.*, No. 07-5681, 2007 WL 4119054, at *1 (E.D. La. Nov. 15, 2007) (concluding that the defendant doctor was improperly joined because the plaintiff did not file a complaint under the LMMA before filing suit, because since "the exhaustion of these administrative procedures is a prerequisite to maintaining suit . . . there is currently no reasonable basis to predict whether or not [the plaintiff] has a viable action against [the doctor]"); *Richardson v. Advanced Cardiovascular Sys., Inc.,* 865 F. Supp. 1210, 1217–19 (E.D. La. 1994) (finding plaintiff's malpractice complaint was premature under the LMMA until her claim had been exhausted before the medical review panel).

No. 14-31169

premature under LA. REV. STAT. ANN. § 40.1299.47. *See, e.g.*, *Erdey*, 96 F.R.D. at 596–97;[5] *see also Doe v. Cutter Biological*, 774 F. Supp. 1001, 1004–05 (E.D. La. 1991) (reasoning that "[t]he key inquiry to a claim of fraudulent joinder is whether the plaintiff made the nondiverse party a defendant under a claim theory that has substantive merit," and holding the medical defendants "mist[ook] procedure for substance" in arguing that medical defendants were improperly joined because Louisiana law barred a state suit against them).

After our decisions in *Melder v. Allstate Corp.*, 404 F.3d 328, 331–32 (5th Cir. 2005) and *Holder v. Abbott Laboratories, Co.*, 444 F.3d 383, 387–89 (5th Cir. 2006), district courts began to conclude that LMMA defendants should be treated as improperly joined when the review board has not yet issued its opinion. *See, e.g., Fontenot v. Johnson & Johnson*, No. 10-162, 2010 WL 2541187, at *6–10 (W.D. La. Apr. 30, 2010), *report and recommendation adopted*, No. 10-162, 2010 WL 2541178 (W.D. La. June 17, 2010). We conclude, however, that these cases do not reach as broadly as the Manufacturing Defendants contend.

In *Melder v. Allstate Corp.*, we found plaintiffs bringing claims related to insurance rate-making could not "seek judicial relief until after they ha[d] exhausted their administrative remedies" with the Louisiana Insurance Rate Commission ("LIRC"). 404 F.3d at 332. The plaintiffs sued LIRC, a non-diverse defendant, but this court affirmed the district court's dismissal of LIRC as improperly joined. *Id.* at 330, 332. Since plaintiffs had comprehensive administrative remedies to challenge rates before LIRC and LIRC closely controlled and approved all insurance rates, this court enforced Louisiana's

---

[5] The *Erdey* court also noted that "[u]nder Louisiana procedure, where a dilatory exception pleading prematurity is sustained, the suit is to be dismissed . . . and it is improper to sustain such an exception in a malpractice case and order the proceedings stayed pending presentation to a medical review panel." 96 F.R.D. at 596.

No. 14-31169

requirement that plaintiffs exhaust administrative remedies before bringing suit.[6] *Id.* at 330–32. We repeatedly emphasized the comprehensiveness of the administrative scheme that, in that case, would actually result in an adjudication of the plaintiffs' claim.[7] In *Holder v. Abbott Laboratories, Inc.*, we found that a non-diverse defendant physician was properly dismissed as improperly joined because the plaintiffs had not exhausted remedies under the National Childhood Vaccine Injury Act. 444 F.3d at 387–89 (quoting 42 U.S.C. §§ 300aa–33(5) & –33(11)(a)(1)). The plaintiffs conceded that they had not filed a petition with the United States Court of Federal Claims, as the statute explicitly required, before bringing suit in state or federal court. *Id.* at 388. Again, that case involved a comprehensive (federal) statute that provided for adjudication of the plaintiffs' claim.

By contrast, the LMMA is not a comprehensive administrative scheme designed to adjudicate a plaintiff's malpractice claims. The net result of the process is an expert opinion admissible in a subsequent lawsuit, but not a

---

[6] Additionally, the record did not show that plaintiffs in *Melder* filed for administrative remedies with LIRC at all, and the plaintiffs did not respond to the exhaustion issue in their briefing, except to claim this court could not decide it. *Id.* at 332.

[7] The dissenting opinion asserts that our finding of improper joinder in *Melder* should dictate a finding of improper joinder in this case, which also involves a state administrative scheme. The analogy ends there. *Melder* is inapposite because it involved "an adequate administrative remedy for addressing [the plaintiffs'] grievances." *Melder*, 404 F.3d at 332. The overwhelming focus of our opinion in *Melder* was on the comprehensiveness of the administrative scheme at issue in that case. *See* 404 F.3d at 331–32. We closely analyzed and relied on the "detailed procedure for petitioning" the regulatory authority regarding alleged violations, the fact that the regulatory authority was empowered to issue a final decision appealable to the state courts, and the fact that the regulatory authority was "charged with responsibility for preventing, and [was] uniquely qualified to regulate [the subject matter of the plaintiffs' claims]." *Id.* This stands in stark contrast to the LMMA, which involves a non-comprehensive medical review process that does not result in a binding final decision. *See* LA. REV. STAT. ANN. § 40.1299.47(G), (H). The dissenting opinion's concern that this distinction will lead to confusion is unfounded. We decide here only that the *Melder* holding should not be extended to apply to a situation where the state scheme involves no adjudicative function.

8

decision in and of itself. *See* LA. REV. STAT. ANN. § 40.1299.47(G), (H) (noting the "report of the expert opinion reached by the medical review panel shall be admissible as evidence" in any subsequent lawsuit, but "shall not be conclusive," and that the panel has the "sole duty to express its expert opinion" as to whether the applicable standards of care were met). Thus, a plaintiff who obtains a positive opinion from the medical review board must still file suit and have the claim adjudicated; it is the same for the defendants who have not received anything akin to a final administrative decision and therefore are not "finished," subject only to appeal, once the review is complete.[8] In other words, the medical review panel will not adjudicate Flagg's claim at all; it will simply provide evidentiary support for one side or the other. *See* LA. REV. STAT. ANN. § 40:1299.47(H).

Further, the completion of the process is not always a prerequisite to filing suit. The parties can waive the medical review process in several ways. Most simply, "[b]y agreement of all parties, the use of the medical review panel may be waived." *Id.* § 40.1299.47(B)(1)(c); *see also Delcambre*, 893 So. 2d at 27. Parties may also bypass the panel review process if they have "validly agreed" to submit the claims "to a lawfully binding arbitration procedure." *Id.* § 40.1299.47(A)(1)(a). If the parties or the medical review panel fail to appoint an attorney chairperson and notify the medical review board within one year

---

[8] Rather than constituting a final but appealable administrative decision, the LMMA apparently seeks to incentivize respect for the expert opinion rendered by the panel by imposing costs on a party that receives a unanimous, unfavorable expert opinion and does not subsequently win in court. If a claimant receives a unanimous expert opinion against the malpractice claim and thereafter files suit, the claimant must post a cash or surety bond for the costs of the medical review process, which the defendant health care provider receives *only if* a subsequent suit concludes without finding the defendant liable. *See* LA. REV. STAT. ANN. § 40.1299.47(I)(2)(c). If a defendant health care provider receives a unanimous decision against it and does not otherwise pay the costs of the medical review process or settle with the claimant before a malpractice suit is filed, the defendant has to post the same cash or surety bond and pay a plaintiff the costs of the medical review process, unless the lawsuit finds the defendant is not liable. *Id.* § 40.1299.47(I)(2)(d).

from when the claim was filed, they have waived the use of the panel. *Id.* § 40:1299.47(A)(2)(c). As we have noted, a lawsuit may proceed despite any claim before a medical review panel if the panel fails to render a decision within one year of the selection of the attorney chairperson, unless the parties receive a court-ordered extension for good cause. *Id.* § 40:1299.47(B)(1)(b). Additionally, a health care provider can circumvent the medical review process by filing a lawsuit and challenging the claimant's malpractice claim as prescribed or for failure to state a claim under Louisiana law. *Id.* § 40.1299.47(B)(2)(a)–(b) (noting defendants may claim "no right of action" under Louisiana's Code of Civil Procedure, Article 927(6), or as prescribed by the statute of limitations for medical malpractice in LA. REV. STAT. ANN. § 9:5628). Thus, this procedure is quite different from the comprehensive administrative adjudicatory schemes examined in our prior cases.

Far from demonstrating that there is "no reasonable basis" on which the Medical Defendants could be held liable ultimately in this case, the Manufacturing Defendants indirectly pointed the finger at the Medical Defendants in their arguments about res ipsa loquitur. Indeed, based on the Manufacturing Defendants' arguments, the district court rejected Flagg's attempt to invoke "res ipsa loquitur," observing that the doctrine is not applicable "[w]hen reasonable hypotheses as to other causes of the plaintiff's injuries remain." *Flagg v. Elliot*, No. 2:14-CV-852, 2014 WL 3715127, at *6 (E.D. La. June 16, 2014) (citation omitted).

This situation highlights another problem with concluding the Medical Defendants are improperly joined in this case: it could lead to piecemeal litigation and potentially inconsistent results. The Medical Defendants and the Manufacturing Defendants are clearly properly joined parties in this case under Federal Rule of Civil Procedure 20. All of these defendants are alleged to have combined to cause a single harm to Flagg—pain and further surgeries.

No. 14-31169

The two groups are thus properly tried in the same lawsuit, as Flagg sought to do.

### III.

The LMMA scheme is not the kind of comprehensive administrative scheme we have cited in allowing a district court to discount the citizenship of non-diverse parties. We conclude that the fact that the medical review panel apparently still has yet to issue its opinion[9] does not negate any "reasonable basis for predicting that plaintiffs might establish liability . . . against the in-state defendants." *Badon*, 224 F.3d at 393. Thus, while the case against the Medical Defendants may be premature, they are not "improperly joined" within the meaning of the case law.[10] Accordingly, we VACATE the judgment of the district court and REMAND the case to the federal district court to remand the case to state court.

---

[9] We note that the outside time deadlines set forth in the LMMA are approaching. It has been twenty months since Flagg filed his complaint before the medical review panel, meaning that the "prematurity" of his malpractice claims may soon disappear. The parties have not provided any indication that an expert opinion has issued.

[10] The dissenting opinion disagrees with this conclusion and would instead institute the "bright line rule" that "if the claim is not exhausted, that action is improperly joined." That rule, while bright line, is overbroad and unnecessarily conflates the requirement of exhaustion with the rules for ascertaining improper joinder. We are not suggesting here that parties may avoid exhausting their claims before filing them in federal court, as in the Title VII context the dissenting opinion discusses. The question here is not whether parties must exhaust claims under state law before filing them in federal court. Rather, we are tasked with determining whether improper joinder arises with the presence of any party who arguably must complete further procedures in a non-comprehensive, administrative state-law scheme. The improper joinder analysis turns on whether there is a "reasonable basis for predicting that plaintiffs might establish liability . . . against the in-state defendants." *Badon*, 224 F.3d at 393. Nothing about the LMMA or the non-comprehensive, waivable medical review process suggests that Flagg has "no possibility of recovery" against the Medical Defendants.

No. 14-31169

W. EUGENE DAVIS, Circuit Judge, dissenting:

The majority holds that this case should be remanded to state court even though the non-diverse party cannot be sued under the state statute creating the cause of action. I disagree and dissent.

As the majority opinion reflects, Mr. Flagg brought suit in state court against both the manufacturer of a toe implant and the medical providers who performed the implant. The manufacturing defendants were diverse, while the medical provider defendants were not diverse. Flagg sued the manufacturers for products liability and the medical provider defendants for malpractice.

Under Louisiana Revised Statute § 40:1299.47 (LMMA), which provides a cause of action against health care providers for malpractice, a patient cannot sue that provider until his case is presented to an administrative panel.[1] Louisiana courts consistently support the plain language of the LMMA and hold no suit is available on plaintiff's claim until it is exhausted by the medical review panel.[2]

The primary question here is whether a plaintiff's unexhausted claim against a non-diverse defendant should be disregarded as improperly joined for purposes of determining diversity jurisdiction. The majority refused to dismiss this suit against the medical providers and retain the action against the manufacturing defendants.

*Smallwood v. Illinois Central Railroad Co.* formulated the standard for improper joinder. Improper joinder applies when a plaintiff is unable to maintain a cause of action against the non-diverse party.[3] If there is no

---

[1] The Louisiana Medical Malpractice Act states that a medical review panel must review malpractice claims otherwise "no action" is available in "any court." La. Rev. Stat. § 40:1299.47 (2015).

[2] *See, e.g.*, *Spradlin v. Acadia-St. Landry Med. Found.*, 758 So. 2d 116, 119 (La. 2000) (noting requirement of pre-suit review panel).

[3] 385 F.3d 568, 573 (5th Cir. 2004).

possibility of recovery against the non-diverse party, the plaintiff cannot maintain an action against it.[4]

In *Melder v. Allstate*, 404 F.3d 328 (5th Cir. 2005), and *Holder v. Abbott Labs*, 444 F.3d 383 (5th Cir. 2006), we held that plaintiffs' unexhausted claims under statutes other than the LMMA had no possibility of recovery, and therefore, they were improperly joined. Furthermore we dismissed the suits against defendants who were the subject of unexhausted claims.[5] *Melder* and *Holder* also demonstrate that determination of whether a cause of action exists is made at the time of removal.[6] Following our decisions in *Melder* and *Holder*, all of the federal district courts in Louisiana presented with the question applied a bright line rule to medical malpractice suits: if the claim is not exhausted, that action is improperly joined and the medical provider is dismissed and disregarded for purposes of diversity jurisdiction.[7]

The majority takes the position that these cases are distinguishable because the administrative bodies in *Melder* and *Holder* were authorized to resolve the disputes presented by litigants, whereas the LMMA panel hears evidence and arguments and then issues an opinion on whether malpractice occurred. The LMMA opinion, while not binding, is admissible at a later trial as highly probative evidence.[8]

The majority does not explain why this distinction is significant for determining whether a plaintiff can bring suit under the LMMA. We did not

---

[4] *Id.*

[5] *Melder*, 404 F.3d at 331-32; *Holder*, 444 F.3d at 388-89.

[6] *See Melder*, 404 F.3d at 331-32; *Holder*, 444 F.3d at 388-89; *accord Grupo Dataflux v. Atlas Global Grp.*, 541 U.S. 567, 570 (2004).

[7] *See, e.g.*, *Pardo v. Medtronic, Inc.*, 2010 WL 4340821 (E.D. La. Oct. 26, 2010); *Fontenot v. Johnson & Johnson*, 2010 WL 2541187 (W.D. La. Apr. 30, 2010); *Ellis v. Ethicon, Inc.*, 2010 WL 1251640 (M.D. La. Feb. 19, 2010).

[8] *See McGlothlin v. Christus St. Patrick Hosp.*, 65 So. 3d 1218, 1226-27 (La. 2011).

condition our holding in *Melder* and *Holder* on such a consideration; and, we have never considered such a distinction relevant under Title VII.[9]

Under Title VII, an employee asserting a claim of employment discrimination against an employer must file a charge with the EEOC.[10] The EEOC then must be given an opportunity to investigate the charge and, if reasonable cause exists, mediate the dispute.[11] Employees cannot sue until this process is exhausted and the EEOC issues a right-to-sue letter.[12]

The EEOC has no authority to resolve disputes by rendering a binding decision.[13] Instead it can only determine whether reasonable cause exists and conciliate the dispute, issue a right to sue letter, or file suit itself.[14] But even though the EEOC has no authority to resolve disputes, our courts require employees to exhaust their claim.[15] Critically, a plaintiff suing without exhaustion of the claim with the EEOC suffers dismissal of his suit as required by Title VII.[16]

I cannot endorse a rule that enforces the requirement imposed by a federal statute requiring dismissal of an unexhausted claim, yet refuse to enforce the same requirement in a state statute.

---

[9] Under Title VII, the EEOC "exercises no adjudicatory authority." Federal Judicial Center, *Major Issues in the Federal Law of Employment Discrimination* 89 (5th ed. 2012).

[10] 42 U.S.C. § 2000e-5 (2015).

[11] *Id.*

[12] A civil action on a Title VII claim may brought only "after the giving of [right-to-sue] notice." *Id.*

[13] *See supra*, note 9.

[14] "The only powers of the EEOC are to investigate charges, determine whether there is reasonable cause to support them, [or] attempt to reach a settlement through conciliation." *Id.*

[15] "Title VII requires employees to exhaust their administrative remedies." *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008).

[16] Courts consistently dismiss these unexhausted claims. *See, e.g.*, *Atkins v. Kempthorne*, 353 Fed. App'x 934 (5th Cir. 2009); *Richter v. Advance Auto Parts*, 686 F.3d 847 (8th Cir. 2012); *Vasquez-Rivera v. Figueroa*, 759 F.3d 44 (1st Cir. 2014); *Hildebrand v. Allegheny Cty.*, 757 F.3d 99 (3d Cir. 2014).

No. 14-31169

The majority also distinguishes *Melder* and *Holder* arguing that those administrative bodies acted under a much more comprehensive scheme. In my view, this difference is insignificant for our purposes. The sole issue is whether a plaintiff can demonstrate that he has a viable action against a non-diverse defendant at the time the action is removed. We should have a bright line rule: when the statute creating a cause of action requires exhaustion with an administrative agency before suit can be filed, a plaintiff cannot maintain an action in court on the unexhausted claim. Such an action should be dismissed, and the defendants disregarded for diversity jurisdiction purposes.[17]

Under the majority's rule, courts would be required to evaluate the comprehensiveness of the administrative scheme in each new statute along with the adjudicative authority of the administrative body. District courts would be required to determine on which side of the line the administrative scheme falls. This is not a sensible approach. To the contrary, we should respect the judgement of the state on how it chooses to structure its administrative scheme. So long as the state determines that no suit may be filed on a cause of action until exhaustion, we should follow that directive.

Finally, the majority's concern based on judicial efficiency considerations for splitting the products liability and medical malpractice cases is overblown. If the district court in this case dismisses the non-diverse medical provider parties as improperly joined, nothing prevents it from staying the products action pending the medical review panel's opinion. Then, if the plaintiff decides to forgo his malpractice claim, the district court can resolve the products case. However, if the plaintiff joins the malpractice case with the pending products case, then the district court will remand the entire case for a single trial.

---

[17] *See Melder*, 404 F.3d at 331-32; *Holder*, 444 F.3d at 388-89; *accord McClain*, 519 F.3d at 273.

No. 14-31169

For these reasons, I respectfully dissent.